EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Héctor Juan Matos Rivera<br><br>Recurrido<br><br>v.<br><br>Aleida Soler Ortiz<br><br>Peticionaria | Certiorari<br><br>2024 TSPR 50<br><br>213 DPR ___ |

Número del Caso: CC-2023-0480

Fecha: 21 de mayo de 2024

Tribunal de Apelaciones:

    Panel II

Representantes legales de la parte peticionaria:

    Lcdo. Domingo Rivera Colomer
    Lcda. Jinelly Laureano Vázquez

Representante legal de la parte recurrida:

    Lcdo. Wilson Galarza Galarza

Materia: Derechos Reales – Si un cónyuge o una cónyuge debe ser privada de su cuota de participación, cuando contrajo matrimonio bajo el régimen de separación de bienes y adquirió el 50% de participación en común pro indiviso de un inmueble, por razón de que no contribuyó a la deuda hipotecaria.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Héctor Juan Matos Rivera<br><br>Recurrido<br><br>v.<br><br>Aleida Soler Ortiz<br><br>Peticionaria | CC-2023-0480 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 21 de mayo de 2024.

El caso que está hoy ante nuestra consideración nos exige contestar la interrogante siguiente: ¿Debe ser privada de su cuota de participación una excónyuge que contrajo matrimonio bajo el régimen de separación de bienes y adquirió el 50% de partición en común pro indiviso de un inmueble por razón de que no contribuyó a la deuda hipotecaria durante la vigencia del vínculo? Adelantamos que, de acuerdo con los términos pactados en las escrituras de capitulaciones, de compraventa y de hipoteca entre los entonces cónyuges, la respuesta es en la negativa.

Expuesta la médula de la controversia, procedo a exponer los antecedentes fácticos que la originaron.

**I**

El 7 de marzo de 2019, el Sr. Héctor Juan Matos Rivera (señor Matos Rivera o Recurrido) presentó una <u>Demanda</u> de liquidación de comunidad de bienes en contra de la Sra. Aleida Soler Ortiz (señora Soler Ortiz o Peticionaria). En esta sostuvo que el 20 de diciembre de 2015, contrajo nupcias con la señora Soler Ortiz bajo el régimen económico de separación de bienes, pero que durante la vigencia del matrimonio adquirieron deudas y bienes muebles e inmuebles en comunidad sujetos a liquidación.[1] Añadió que durante el matrimonio adquirieron un bien inmueble residencial ubicado en Toa Alta cuyo uso y disfrute la señora Soler Ortiz le privó a pesar de haber sido quien efectuó los pagos del préstamo hipotecario desde el inicio. Por todo ello, el señor Matos Rivera solicitó la partición de la comunidad de bienes adjudicándole a cada parte lo que le corresponda, así como el pago del crédito correspondiente al tiempo privado del uso y el pago mensual.

El 9 de abril de 2019, la señora Soler Ortiz presentó su contestación a la demanda. En síntesis, negó la privación del uso y disfrute del inmueble y alegó que existía una orden de protección en contra del señor Matos Rivera que le ordenó a no tener comunicación con ella y a desalojar la residencia.

---

[1] El matrimonio entre la señora Soler Ortiz y el señor Matos Rivera se disolvió el 4 de enero de 2019 mediante Sentencia final y firme.

De igual forma, negó la existencia de los créditos solicitados por el Recurrido y presentó una reconvención para peticionar el crédito por las mejoras que realizó al inmueble con aportaciones privativas y su labor doméstica, lo cual adujo sobrepasaba la participación que pudiera tener el señor Matos Rivera. De igual forma, solicitó que se le adjudicara el inmueble a su favor.

El 26 de abril de 2019, el señor Matos Rivera contestó la reconvención y alegó que fue quien exclusivamente: 1) aportó la cantidad por concepto de pronto para la compra del inmueble; 2) pagó todas las mensualidades del préstamo hipotecario, y 3) pagó con un préstamo personal las mejoras realizadas. Añadió que la señora Soler Ortiz figuró en la escritura de compraventa del inmueble únicamente debido a que el tipo de préstamo para adquirir la propiedad requería tomar en consideración las responsabilidades económicas de esta, pero que no aportó dinero alguno.

Tras varios incidentes procesales, el 20 y 21 de septiembre de 2021, se llevó a cabo el juicio en su fondo. El 28 de noviembre de 2022, el Tribunal de Primera Instancia notificó la <u>Sentencia</u> que declaró con lugar la demanda sobre liquidación de comunidad de bienes y le adjudicó al señor Matos Rivera el 100% de titularidad del inmueble. En cuanto a esto, el foro primario resolvió que se estableció que fue el Recurrido quien pagó el precio de la opción de compra, los gastos de cierre, las mensualidades del préstamo

hipotecario, los muebles y las mejoras realizadas con bienes privativos. Además, le ordenó a la Peticionaria a pagar $5,688.00 por concepto de renta correspondiente al periodo de tiempo en que privó al Recurrido del uso y disfrute del inmueble.[2] Asimismo, incluyó una orden dirigida al Registrador de la Propiedad para que efectuara la anotación correspondiente en torno a la titularidad del inmueble a favor del señor Matos Rivera.

Respecto a la reconvención, resolvió que la Peticionaria poseía un crédito de $846.00 por el saldo de una tarjeta de crédito y la compra de unas palmas, pero que no presentó prueba que sustentara los créditos reclamados por el aumento en valor, los intereses del préstamo hipotecario o por tareas domésticas realizadas. Finalmente, dictaminó que no le mereció credibilidad el testimonio de la Peticionaria sobre las mejoras realizadas con dinero privativo, puesto que no trabajaba para la fecha en que se adquirió el inmueble y se realizaron las mejoras. Añadió que tampoco colocó al foro en posición de determinar el aumento en el valor de la propiedad como consecuencia de tales mejoras por no haberse tasado la propiedad para propósitos de la acción judicial de partición.

---

[2] El foro de primera instancia calculó la renta a razón del 50% del pago del préstamo hipotecario mensual ($237.00 mensuales) y desde que se presentó la demanda en marzo de 2019 hasta febrero de 2021 (24 meses), cuando le ordenó a la señora Soler Ortiz pagar el 50% del préstamo a modo de renta.

En desacuerdo, el 22 de diciembre de 2022, la señora Soler Ortiz presentó en el Tribunal de Apelaciones un recurso de apelación. En esencia, sostuvo que: 1) lo resuelto es contrario a los acuerdos pactados por las partes en las escrituras de capitulaciones matrimoniales, de compraventa y constitución de hogar seguro y de hipoteca, y 2) que la división de la comunidad se hizo en contravención al pacto expreso de los comuneros al privar a la Peticionaria del hogar seguro y utilizando un cómputo especulativo.

El 23 de junio de 2023, el foro apelativo intermedio dictó una <u>Sentencia</u> en la que confirmó el dictamen del foro primario. Resolvió que procede el canon en concepto de renta por el periodo en que la señora Soler Ortiz excluyó del uso y disfrute del inmueble al Recurrido desde el acto obstativo de la presentación de la demanda. Asimismo, concluyó que fue el Recurrido quien único compareció como deudor en la escritura de hipoteca y realizó los pagos mensuales de la hipoteca. Finalmente, determinó que la señora Soler Ortiz continuó viviendo en la propiedad común sin aportar a los pagos mensuales, a pesar de haber terminado la vigencia de la orden de protección.

En desacuerdo, el 24 de julio de 2023, la Peticionaria presentó la <u>Solicitud de certiorari</u> ante nuestra consideración. Mediante esta, esbozó los siguientes señalamientos de error:

> PRIMER ERROR: Erró manifiestamente el Tribunal de Apelaciones… al negarle validez

y eficacia jurídica a los convenios bilaterales libre y autónomamente pactados por las partes en el ejercicio de sus voluntades; según surgen de los documentos públicos admitidos en evidencia que establecen la improcedencia de los créditos reclamados por la parte demandante-recurrida en la acción de división de la comunidad de bienes sobre el inmueble adquirido durante el matrimonio de las partes…

SEGUNDO ERROR: Erró el TPI y el Tribunal de Apelaciones al dividir la comunidad de bienes en contravención al pacto expreso de los comuneros, privando a la Sra. Soler a su Hogar Seguro. Al así hacerlo el TPI y el Tribunal de Apelaciones al confirmar la Sentencia, utilizó un cómputo especulativo, actuando con pasión, prejuicio o parcialidad, o incurrió en error manifiesto ante la ausencia total de prueba admitida, o en la alternativa, prueba insuficiente para estimar probados los créditos que tenían derecho las partes.

Esbozó que ante la claridad de los acuerdos pactados era innecesario recurrir a normas interpretativas supletorias sobre la comunidad de bienes referentes al reconocimiento de créditos a concederse al momento de la partición, como lo fue el crédito reconocido por renta por la posesión exclusiva del bien.[3] Como planteamiento alterno, adujo que el foro primario no tuvo ante sí prueba admisible que le permitiera computar el valor del inmueble o de las participaciones indivisas de los comuneros, ni prueba que

---

[3] La Peticionaria también arguyó que su interés propietario sobre el inmueble está protegido por garantías constitucionales y bajo el Art. 8 de la Ley de Derecho a la Protección del Hogar Seguro, infra, según se pactara en la escritura de compraventa.

demostrara las sumas solicitadas por el señor Matos Rivera por las mejoras.

Oportunamente, el Recurrido presentó su Alegato. Expresó que fue en el Tribunal de Apelaciones donde por primera vez la parte peticionaria levantó como defensa afirmativa que el inmueble constituye su hogar seguro, mas detalló que esta es inaplicable en la controversia de autos. A su vez, adujo que la parte Peticionaria solicitó créditos en el foro de primera instancia, pero que posteriormente en su apelación y solicitud de certiorari alegó que su concesión es contraria a los términos pactados en la escritura de capitulaciones. Sostuvo que existe una comunidad de bienes sobre el inmueble y que en las capitulaciones no hubo una renuncia a reclamar los créditos, particularmente dado al uso exclusivo del inmueble por parte de la Peticionaria.

Además, abundó en que el hecho que solo él compareciera a la escritura de hipoteca como deudor, no constituyó un pacto expreso de que la Peticionaria no tenía que aportar de acuerdo con su participación en los gastos de la comunidad de bienes. Por último, expuso que el hecho que ninguna de las partes hubiese presentado un informe de tasación que acreditara el valor actual del inmueble, no limita la autoridad del foro de primera instancia de basar su determinación en la prueba recibida en el juicio.

Así las cosas, expedido el recurso de certiorari y evaluados los argumentos de ambas partes, procedemos a

resolver el asunto, no sin antes repasar el Derecho aplicable que rige esta controversia.

## II

### A.

En nuestro ordenamiento, el alcance jurídico del matrimonio es bidimensional puesto que surte efectos personales y patrimoniales.[4] Por ello, las personas que se unirán en matrimonio pueden escoger, mediante capitulaciones matrimoniales, el régimen económico que regirá durante su matrimonio.[5] Como resultado, el contrato de capitulaciones matrimoniales permite

> regular los derechos de los esposos sobre sus bienes respectivos; los derechos sobre las ganancias realizadas por ellos durante su unión; los intereses de los hijos y de la familia; los intereses de los terceros que contratan con uno u otro de los esposos, y, en definitiva, el interés económico y social.[6]

---

[4]Roselló Puig v. Rodríguez Cruz, 183 DPR 81, 92 (2011).

[5]Scotiabank v. TCG et al., 198 DPR 158, 166-167 (2017). Se clarifica que el derogado Código Civil de Puerto Rico de 1930 (Código Civil de 1930) es el aplicable a la controversia de autos, puesto que los hechos se suscitaron durante su vigencia. Al respecto, adviértase que la Ley Núm. 62-2018 enmendó el Código Civil de 1930 e introdujo en nuestro ordenamiento el principio de la mutabilidad de las capitulaciones matrimoniales y las mismas se pueden otorgar, modificar o sustituir antes o después de celebrado el matrimonio. Esta normativa se mantiene en el Código Civil de 2020. Véanse, Arts. 488 y 491 del Código Civil de 2020, Ley Núm. 55-2020, 31 LPRA secs. 6911, 6914.

[6](Énfasis en el original omitido). Guadalupe Solís v. González Durieux, 172 DPR 676, 683 (2007) citando a Maldonado v. Cruz Dávila, 161 DPR 1 (2004).

Por este motivo, cuando los cónyuges pactan el régimen económico que regirá durante su matrimonio, les aplica el principio de autonomía de la voluntad y la libertad individual de ambos cónyuges.[7] Es al amparo de dicha libertad que al pactarse las capitulaciones la pareja puede optar por: 1) la separación de bienes, pero con participación en las ganancias; 2) sociedad de gananciales; 3) renuncia al régimen legal de gananciales; 4) total separación de bienes, o 5) elegir cualquier otro régimen que combine estas posibilidades, siempre que sea acorde a la ley, la moral o el orden público.[8]

En cuanto a esto último, es norma conocida que los otorgantes no podrán estipular algo que sea contrario a las leyes y toda estipulación que no se ajuste a ello se tendrá por nula.[9] Consecuentemente, se ha reconocido que en las capitulaciones las partes pueden pactar asuntos ajenos al régimen patrimonial y ello, por sí solo, no conllevará su nulidad.[10]

Ahora bien, ante la falta de capitulaciones matrimoniales o si estas son declaradas nulas o

---

[7]Maldonado v. Cruz, supra, págs. 16-17 (cita omitida).

[8]Guadalupe Solís v. González Durieux, supra; Maldonado v. Cruz, supra, pág. 17.

[9]Art. 1268 del Código Civil de 1930, 31 LPRA ant. sec. 3552. Para una referencia a la disposición equivalente bajo el Código Civil de 2020, véase, Art. 498, 31 LPRA sec. 6931.

[10]Véase, Maldonado v. Cruz, supra, págs. 20-21; Umpierre v. Torres Díaz,114 DPR 449, 459-460 (1983).

insuficientes, se entenderá que el matrimonio se contrajo bajo el régimen de sociedad legal de gananciales.[11] Bajo dicho régimen se reconoce la titularidad conjunta y sin especial atribución de cuotas de todos los bienes del matrimonio, así como sobre las deudas y obligaciones que fueron asumidas por cualquiera de los cónyuges durante el mismo.[12]

De contraerse el matrimonio bajo este régimen ganancial, las siguientes obligaciones, entre otras, serán a cargo de la sociedad: (1) toda deuda u obligación contraída por cualquiera de los cónyuges durante el matrimonio, (2) las reparaciones mayores o menores de los bienes gananciales, y (3) los préstamos personales en los que incurra cualquiera de los cónyuges.[13]

Al momento de disolverse el matrimonio bajo este régimen, surge entre los cónyuges una comunidad ordinaria compuesta por todos los bienes que eran gananciales y en los que ambos participan por partes iguales mediante cuotas

---

[11]Art. 1267 del Código Civil de 1930, 31 LPRA ant. sec. 3551. Véase, Betancourt González v. Pastrana Santiago, 200 DPR 169, 178 (2018); SLG Báez-Casanova v. Fernández et al., 193 DPR 192 (2015)(Sentencia); Roselló Puig v. Rodríguez Cruz, supra; Muñiz Noriega v. Muñoz Bonet, 177 DPR 967 (2010).

[12]Díaz Rodríguez v. García Neris, 208 DPR 706, 716 (2022); Roselló Puig v. Rodríguez Cruz, supra, pág. 93; Arts. 1295, 1307 y 1308 del Código Civil de 1930, 31 LPRA secs. ant. 3621, 3647-3648.

[13]Art. 1308 del Código Civil de 1930, 31 LPRA ant. sec. 3661.

independientes, alienables y homogéneas.[14] Esta comunidad
post-ganancial, a falta de un contrato o de disposiciones
especiales, estará gobernada por las normas establecidas en
el Código Civil referentes a la figura de la comunidad de
bienes.[15] A su vez, ambos excónyuges pueden administrar la
comunidad, así como solicitar su división, puesto que ninguno
está obligado a permanecer en comunidad.[16] Cuando uno de los
excónyuges solicita la división, se liquidan los bienes que
pertenecían a la sociedad legal de gananciales y deja de
existir la comunidad post-ganancial.

Precisamente, por ser el régimen ganancial la
consecuencia de la ausencia de capitulaciones matrimoniales,
hemos sostenido que las estipulaciones que se recogen en el
contrato de capitulaciones deben ser claras y precisas.[17] De
igual forma, dichas estipulaciones se deben interpretar

---

[14]Díaz Rodríguez v. García Neris, supra, pág. 716;
Betancourt González v. Pastrana Santiago, supra; BL
Investment Inc. v. Registrador, 181 DPR 5, 15 (2011);
Montalván v. Rodríguez, 161 DPR 411, 421-422 (2004).

[15]31 LPRA secs. ant. 1271-1285. Véase, Rivera Lamberty
v. Rodríguez Amador, supra, pág. 205 (Sentencia); BL
Investment Inc. v. Registrador, supra, pág. 24; Montalván v.
Rodríguez, supra, págs. 421-422. El Código Civil de Puerto
Rico de 2020 recoge la doctrina y la jurisprudencia sobre la
comunidad post-ganancial en los Arts. 547 al 554 (31 LPRA
secs. 7041-7048), así como las disposiciones relacionadas a
la comunidad de bienes en los Arts. 835-859, 31 LPRA secs.
8191-8232.

[16]Art. 334 del Código Civil de 1930, 31 LPRA ant. sec.
1279; Montalván v. Rodríguez, supra, pág. 422.

[17]Guadalupe Solís v. González Durieux, supra, pág. 684.

estrictamente en todo lo que afecten al régimen económico matrimonial.[18] Ahora bien, hay instancias en que la escritura de capitulaciones, como un contrato al fin, requerirá un ejercicio de interpretación y ante ese tipo de controversia, "los tribunales deberán ejercer su facultad interpretativa conforme a las normas de hermenéutica contractual dispuestas en el Código Civil".[19]

**B.**

La comunidad de bienes existe cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas.[20] La distribución de la comunidad se rige por una presunción de igualdad en la participación y el concurso de sus partícipes, tanto en los beneficios como en las cargas, será proporcionado a sus respectivas cuotas.[21] En nuestro ordenamiento, el Código Civil de 1930 regula la comunidad de procedencia romana en la que cada comunero tiene una cuota alícuota de la cosa.[22] **A falta de un contrato o disposiciones**

---

[18]Íd., citando a Vilariño Martínez v. Registrador, 88 DPR 288, 293 (1963).

[19]Guadalupe Solís v. González Durieux, supra, pág. 684. Véanse los Arts. 1233-1241 del Código Civil de 1930, 31 LPRA secs. ants. 3471-3479.

[20]Art. 326 del Código Civil de 1930, 31 LPRA ant. sec. 1271. Véanse los Art. 835-836 en el Código Civil de 2020, 31 LPRA secs. 8191-8192.

[21]Art. 327 del Código Civil de 1930, 31 LPRA ant. sec. 1272; Molina González v. Álvarez Gerena, 203 DPR 442 (2019).

[22]Díaz v. Aguayo, 162 DPR 801, 808 (2004) (citas omitidas).

**especiales, la comunidad se regirá de manera supletoria por las disposiciones del Código Civil aplicables a la comunidad de bienes.**[23]

Para que la compraventa de una finca en común pro indiviso sea válida, se requiere que se efectúe mediante escritura pública en la cual se haga constar la porción o la participación en común pro indiviso que le corresponde al comprador, así como las advertencias legales correspondientes y la aceptación del comprador de adquirir en dicha capacidad.[24]

En cuanto al uso de los bienes, se reconoce que cada partícipe puede servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de forma que no perjudique el interés de la comunidad, ni les impida a los demás coparticipes utilizarlas según su derecho.[25] En atención a ello, en ausencia de prueba en contrario, se presume que un comunero consintió tácitamente a que el otro comunero ocupara el bien común.[26]

---

[23]Art. 326 del Código Civil de 1930, 31 LPRA ant. sec. 1271.

[24]Art. 330-A del Código Civil de 1930, 31 LPRA ant. sec. 330-1275a.

[25]Art. 328 del Código Civil de 1930, 31 LPRA ant. sec. 1273.

[26]Rivera Lamberty v. Rodríguez Amador, 205 DPR 194, 212 (2020)(Sentencia).

Así, por ejemplo, hemos expresado que mientras dure una comunidad post ganancial cada excónyuge puede usar la cosa común, aunque ninguno podrá tener el control total sobre sus bienes.[27] En cuanto esto, hemos resuelto que el **comunero está impedido de utilizar la cosa común para su particular y exclusivo beneficio y sin pagar una adecuada compensación a la comunidad.[28] Ello se da porque el uso exclusivo del bien común por uno solo de los comuneros es contrario a los principios elementales de derecho basados en la equidad, los cuales no permiten el enriquecimiento injusto.**[29] En atención a esto, se reconoce que el uso de un bien común para el beneficio exclusivo de uno de los comuneros conllevará el pago de una compensación a la comunidad.[30]

Sin embargo, este Tribunal ha expresado que el uso exclusivo del bien por uno solo de los comuneros no siempre conllevará el pago de una compensación a los demás.[31]

---

[27]Rivera Lamberty v. Rodríguez Amador, supra, pág. 205; Betancourt González v. Pastrana Santiago, supra, pág. 180.

[28]Rivera Lamberty v. Rodríguez Amador, supra, pág. 205; Díaz v. Aguayo, supra, págs. 813-814; De La Fuente v. A. Roig Sucrs., 82 DPR 514, 534 (1961).

[29]Rivera Lamberty v. Rodríguez Amador, supra, pág. 207; Díaz v. Aguayo, supra, pág. 814.

[30]De la Fuente v. A. Roig Sucrs., supra, pág. 534. Para una discusión sobre los remedios que tienen a su alcance los comuneros para recobrar la posesión, véanse, Cintrón Vélez v. Cintrón de Jesús, 120 DPR 39, 51 (1987) y González v. Quintana, 145 DPR 463 (1998).

[31]Molina González v. Álvarez Gerena, supra, en la pág. 455. Véase, Díaz v. Aguayo, supra, págs. 820-823 (Opinión de conformidad del Juez Presidente Señor Hernández Denton).

Similarmente, el hecho de que solo uno de los comuneros use la cosa común no convierte por sí solo ese uso en uno ilícito.[32] Esto es porque no se puede descartar la posibilidad de que se prestara un consentimiento expreso o tácito o que los comuneros llegaran a un acuerdo sobre el uso del bien.[33]

Por ello, para que el uso del bien por solo uno de los comuneros sea uno ilícito y exista una acción por resarcimiento mediante crédito es necesario que el otro comunero infrinja una reglamentación específica del uso o que al comunero afectado se le impida utilizar el bien o **requiera una compensación económica por ese uso incompatible con su derecho**, como lo sería una renta.[34]

Ahora bien, es norma reconocida en nuestro ordenamiento que para que un comunero tenga derecho al pago de una compensación por el tiempo que fue excluido de su participación en la comunidad, deberá identificar un acto obstativo que suponga tal exclusión o haber realizado un requerimiento afirmativo.[35] Es decir, será a partir de dicho

_____

[32]Rivera Lamberty v. Rodríguez Amador, supra, pág. 213.

[33]Díaz v. Aguayo, supra, pág. 814, esc. 2.

[34]Rivera Lamberty v. Rodríguez Amador, supra, en las págs. 212-214(citas omitidas).

[35]Molina González v. Álvarez Gerena, supra, pág. 457. Véase, además, Meléndez Berríos v. Maldonado Dieppa, 175 DPR 1007, 1018 (2009) (Sentencia con Opinión de Conformidad de la Jueza Asociada Señora Rodríguez Rodríguez). Hemos reconocido que la efectividad del requerimiento no dependerá de requisitos de forma alguna, sino que será un asunto de prueba que se deberá dirimir conforme a la normativa de

acto o requerimiento que se considerará que nació la obligación de resarcir al comunero que fue excluido de la posesión y el uso mediante la compensación o un crédito.

Así por ejemplo, en Molina González v. Álvarez Gerena, supra, resolvimos que el acto obstativo se concretizó mediante la presentación de la demanda en la que una de las comuneras solicitó particularmente la división de la comunidad y el pago de rentas correspondientes al uso exclusivo del inmueble por parte del otro comunero.[36] Bajo los hechos particulares de dicho pleito, se determinó que la compensación por el uso y disfrute exclusivo del bien común debía computarse desde la fecha de interponerse la demanda hasta que se dictó la sentencia dividiendo la comunidad.[37]

---

derecho probatorio. Rivera Lamberty v. Rodríguez Amador, supra, págs. 215-216.

[36]Todo ello, claro está, ante la ausencia de prueba de un acto obstativo realizado previo a la presentación de la demanda. Véase, Molina González v. Álvarez Gerena, supra, págs. 459, 461-462 (Opinión de conformidad del Juez Asociado Señor Martínez Torres). Adviértase que no necesariamente la presentación de la demanda será el momento del acto obstativo. Así, por ejemplo, en Rivera Lamberty v. Rodríguez Amador, supra, se determinó que la solicitud de crédito no se incluyó como reclamación original de la demanda, sino que surgió en una moción posterior en oposición que se presentó durante el litigio. Íd., pág. 216. Por lo tanto, el cálculo de la compensación por el uso exclusivo se hizo desde la presentación de esa moción.

[37]Molina González v. Álvarez Gerena, supra, pág. 459. Dicho pleito se trató de una comunidad de bienes hereditaria y la valorización se llevó a cabo utilizando como base la fórmula contenida en el informe que el perito presentó en el foro de primera instancia, que correspondía a la mitad de la renta mensual de la propiedad. Íd., esc. 10, pág. 459. Además, en cuanto a la cuantía correspondiente a la

Por otra parte, y en lo aquí pertinente, ningún comunero está obligado a permanecer en la comunidad, por lo que cada uno podrá solicitar en cualquier momento que se divida la cosa común.[38] Esta acción de un comunero para solicitar la división de la cosa común es imprescriptible.[39] Ahora bien, como excepción, la cosa común no podrá dividirse si al hacerlo resulta inservible para el uso a que se destina.[40] A su vez, para que sea posible la división física, el bien debe ser susceptible de fraccionamiento, tanto física como jurídicamente.[41] Por ello, cuando la cosa común fuera esencialmente indivisible y los comuneros no convinieren en

---

participación, se mencionó que en sus determinaciones de hecho el foro de instancia determinó la cuantía a partir del cincuenta por ciento del valor tasado del inmueble. Íd., pág. 461, esc. 13.

[38]Art. 334 del Código Civil de 1930, 31 LPRA ant. sec. 1279. Véase, Art. 849 del Código Civil de 2020, 31 LPRA sec. 8222.

[39]Art. 1865 del Código Civil de 1930, 31 LPRA ant. sec. 5295. Véase, Art. 1205 del Código Civil de 2020, 31 LPRA sec. 9497. La llamada actio acommuni dividundo, que se refiere a la acción que inicia uno o varios comuneros de una comunidad ordinaria para lograr la división de la cosa común y la consecuente adjudicación de lo que a cada cual corresponde. L.M. Argüelles, Lecciones sobre derechos reales (Conforme al Código Civil de 2020), 1era ed., San Juan, Bibliográficas, 2023, págs. 289-290.

[40]Art. 335 del Código Civil de 1930, 31 LPRA ant. sec. 1280. Cf., Art. 850 del Código Civil de 2020, 31 LPRA sec. 8223.

[41]L.M. Argüelles, op. cit. pág. 290.

que se le adjudique a uno de ellos indemnizando a los demás, la cosa se venderá y su precio será repartido.[42]

Además, la división de la cosa común no perjudicará el derecho que terceros posean sobre la cosa común, como el hipotecario, servidumbre o algún otro derecho real.[43] Como resultado, dichos acreedores o terceros de buena fe podrán intervenir en el proceso de división de la comunidad en protección de sus intereses.[44] Asimismo, el Código Civil establece que, al momento de dividir una comunidad de bienes, serán aplicables las reglas concernientes a la división de la comunidad hereditaria.[45]

En consecuencia, el procedimiento será uno similar al de partición de herencia, el cual consiste en tres operaciones principales: 1) inventario y avalúo; 2) liquidación, y 3) división y adjudicación.[46] El inventario

---

[42]Art. 338 del Código Civil de 1930, 31 LPRA ant. sec. 1283. Cf., Art. 857 del Código Civil de 2020, 31 LPRA sec. 8230, este añadió que, de no lograrse acuerdo mayoritario de los comuneros en la adjudicación, se venderá la cosa en pública subasta y se partirá el precio entre ellos.

[43]Art. 339 del Código Civil de 1930, 31 LPRA ant. sec. 1284.

[44]L.M. Argüelles, op. cit., pág. 291.

[45]Art. 340 del Código Civil de 1930, 31 LPRA ant. sec. 1285. Véase, Saurí v. Saurí, 39 DPR 511 (1929). Para la distinción entre la comunidad hereditaria y la comunidad de bienes, refiérase a Kogan v. Registrador, 125 DPR 636, 651-652 (1990).

[46]González Tejera, E., Derecho Sucesorio Puertorriqueño, 1983, Volumen I, págs. 361 – 374. Véase, además, José Ramón Vélez Torres, Curso de Derecho Civil, Derecho de Sucesiones, 2010, Tomo IV, Volumen III, págs. 523-526.

consiste en una relación de bienes -descritos o detallados-
de manera que queden suficientemente individualizados e
identificados.[47] Por su parte, el avalúo es la tasación o
valoración de cada uno de los bienes del inventario y debe
referirse al estado de dichos bienes al momento de la
partición.[48] Luego procede hacer la liquidación, que consiste
en deducir de los bienes inventariados los pasivos y fijar
el activo neto.[49]

Posteriormente se hará la división, que consiste en el
señalamiento de la cuota del haber de cada comunero y, en
virtud de ello, separar determinados grupos de bienes para
pagar cada partición.[50] Finalmente, la adjudicación es la
última operación de la partición y es el hecho de entregar
a cada comunero lo que le corresponde con exclusión de los
demás.[51]

C.

La hipoteca es un derecho real que sujeta o vincula lo
hipotecado a que eventualmente su titular pueda exigir la
realización de su valor, así como tomar medidas para
salvaguardarlo, en seguridad o garantía de la efectividad de

---

[47]José Ramón Vélez Torres, op. cit., pág. 523.

[48]Íd.

[49]Íd.

[50]Íd., pág. 524.

[51]Íd., pág. 525.

alguna obligación dineraria.[52] De esta forma, la hipoteca es un derecho de realización de valor, ya que, ante el incumplimiento del deudor con la obligación principal dentro del plazo pactado, el acreedor tiene la facultad de recobrar su acreencia mediante la enajenación del inmueble hipotecado.[53] Como resultado, la hipoteca sujetará directa e inmediatamente los bienes y derechos sobre los cuales se impone -cualquiera sea su poseedor o titular— al cumplimiento de la obligación para cuya seguridad se constituyó.[54]

Al mismo tiempo, para que la hipoteca quede constituida se requiere inscripción registral, ya que es mediante la inscripción en el Registro de la Propiedad que la hipoteca adviene a la vida jurídica y la garantía de un crédito personal se convierte en real, para que así el acreedor hipotecario pueda enajenar el inmueble hipotecado.[55] A causa de ello, la hipoteca debidamente constituida le permitirá al acreedor hipotecario perseguir el bien hipotecado y proceder contra el deudor original, el cesionario de este, o contra quien haya comprado la propiedad, si este último asumió el pago de la hipoteca.

---

[52]Bco. Popular v. Registrador, 181 DPR 663, 673 (2011)(cita omitida).

[53]Íd.

[54]Art. 54 de la Ley Núm. 210-2015, según enmendada, 30 LPRA sec. 6081.

[55]Crespo Rodríguez v. González González, 208 DPR 557 (2022).

En lo pertinente, en el lado pasivo de la relación hipotecaria es posible la participación de una tercera persona extraña a la obligación principal, a quien la doctrina nombra como hipotecante no deudor.[56] Dicha figura se caracteriza porque constituye la hipoteca sobre un bien propio, pero en seguridad de una deuda ajena.[57] Así, la responsabilidad de este tercero no hipotecante queda limitada al bien hipotecado, pues no es el deudor personal de la obligación asegurada.[58]

### III

Durante la vigencia de su matrimonio bajo el régimen de separación de bienes, la señora Soler Ortiz y el señor Matos Rivera adquirieron un inmueble para residencia conyugal en comunidad pro indiviso y con igual cuota de participaciones. Concluido el vínculo matrimonial, en la acción judicial para extinguir dicha comunidad los foros recurridos le adjudicaron al señor Matos Rivera el 100% de la titularidad

---

[56]L. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 3ra ed., San Juan, Jurídica Editores, 2012, pág. 504. Véase, Art. 1756 del Código Civil de 1930, 31 LPRA ant. sec. 5001 ("Las terceras personas extrañas a la obligación principal, pueden asegurar ésta pignorando o hipotecando sus propios bienes").

[57]Íd., citando a R. Carpi Martín, La hipoteca en garantía de deuda ajena, Madrid, Marcial Pons, 2002.

[58]Íd. Véase, además, Roca Sastre y otros, Derecho Hipotecario, 9na ed., Barcelona, Bosch, 2009, T. VIII, págs. 220-221. ("El hipotecante no deudor es el que, sin estar personalmente obligado por un débito, ha hipotecado voluntariamente un bien propio en garantía de dicho débito ajeno. Concede, pues, una hipoteca en seguridad del débito de otro"). Íd., pág. 220.

del inmueble. De una lectura sosegada de los dictámenes se desprende que para ambos foros fue un factor determinante el que el señor Matos Rivera declarara en el juicio en su fondo que fue quien asumió y realizó los pagos principales asociados con el inmueble. Así, por ejemplo, el foro primario expresó que de la evidencia admitida y creída se estableció que este pagó, entre otros, las mensualidades del préstamo hipotecario, los muebles y las mejoras al inmueble, todo ello con bienes privativos.[59]

Similarmente, el Tribunal de Apelaciones determinó, entre otros asuntos, que fue el Recurrido quien compareció como único deudor en la escritura de hipoteca y realizó los pagos mensuales del préstamo hipotecario. Por ello, confirmó la sentencia tras resolver que actuó correctamente el foro primario al concederle el 100% de la titularidad del inmueble al señor Matos Rivera.

Así las cosas, la señora Soler Ortiz cuestiona tales determinaciones ante este Tribunal, por lo que nos

---

[59]Véase, Sentencia, Apéndice, Solicitud de Certiorari, pág. 109. Es meritorio señalar que existe una aparente contradicción en la determinación del Tribunal de Primera Instancia, pues en la sentencia se reconoció que los créditos reclamados por el demandante (señor Matos Rivera) eran improcedentes por responder a deudas adquiridas por este de manera privativa. Íd., pág. 108. El señor Matos Rivera solicitó en dicho foro un crédito de $63,165.16 que incluía el pago de la opción de compra, el pronto para adquirir la propiedad, pago de un préstamo personal para mejoras, pago de un financiamiento para los muebles en Home Patio Gallery, entre otros. Íd., pág. 99. Pero, al disponer de la controversia el foro primario procedió a adjudicarle el 100% de titularidad a este con exclusión de la señora Soler Ortiz.

corresponde dictaminar si lo resuelto -tanto por el foro primario y el foro apelativo intermedio— tuvo el efecto de privarle de sus intereses propietarios y negarle validez a los términos pactados expresamente en las escrituras de capitulaciones, de compraventa e hipoteca. Particularmente, lo referente a la adquisición del bien inmueble con un 50% de participación en común pro indiviso. Adelantamos que los foros recurridos incurrieron en dicho error. Veamos.

Es norma reiterada en nuestro ordenamiento que cuando los términos de un contrato son claros y no dejan duda alguna sobre la intención de las partes contratantes, se utilizará el sentido literal de sus cláusulas.[60] A causa de ello, **se ha reiterado que se debe seguir la letra clara del contrato, cuando ésta refleja inequívocamente la voluntad de las partes.**[61] Es por ello que la intención de las partes será el criterio fundamental para fijar el alcance de las obligaciones contractuales.[62]

---

[60]Art. 1233 del Código Civil de 1930, 31 LPRA ant. sec. 3471; Guadalupe Solís v. González Durieux, supra; Trinidad v. Chade, 153 DPR 280 (2001).

[61]S.L.G. Irizarry v. S.L.G. García, 155 DPR 713, 726 (2001); C.F.S.E. v. Unión de Médicos, 170 DPR 443, 450 (2007); Marcial v. Tomé, 144 DPR 522 (1997).

[62]Merle v. West Bend Co., 97 DPR 403, 409 (1969). Véase, Art. 1233 del Código Civil de 1930, 31 LPRA ant. sec. 3471. En ese sentido, al momento de juzgar la intención de las partes contratantes, se deben evaluar los actos coetáneos y posteriores al contrato. Art. 1234 del Código Civil de 1930, 31 LPRA ant. sec. 3472. Véase, Suárez Figueroa v. Sabanera Real, Inc., 173 DPR 694 (2008).; García López v. Méndez García, 102 DPR 383 (1983).

Por el contrario, hemos reconocido que cuando las cláusulas no son claras o no permiten una comprensión única de lo pactado, serán los tribunales los llamados a interpretar el contrato partiendo de la verdadera y común intención de las partes. A su vez, se debe presuponer la lealtad, corrección y buena fe en su redacción y **se debe interpretar de manera que lleve a resultados conformes a la relación contractual** y que estén de acuerdo con las normas éticas.[63]

Dicho esto, como punto de partida debemos evaluar los términos pactados por los excónyuges referente a sus respectivos derechos y obligaciones bajo su régimen económico matrimonial.

El 17 de noviembre de 2015, el señor Matos Rivera y la señora Soler Ortiz suscribieron la Escritura Núm. 45 de Capitulaciones Matrimoniales. En esta contrataron que su matrimonio **no** se entendería contraído bajo una sociedad legal de gananciales y seleccionaron la separación de bienes como el régimen económico matrimonial. Ahora bien, y en lo aquí pertinente, en la Cláusula Doce (12) dispusieron que "**[l]a participación de cada compareciente en los bienes pertenecientes al nuevo régimen, si alguno, a constituirse**

---

[63]S.L.G. Irizarry v. S.L.G. García, supra, pág. 726.

por ellos, lo será según lo determinen las partes en cada situación particular".[64]

Además, convinieron en la Cláusula Dieciséis (16) que **"[l]as deudas, demandas y obligaciones individuales contraídas por cualesquiera de los cónyuges, continuarán siendo privativas y no podrá afectar al otro cónyuge, a menos que específicamente y por escrito éste o ésta acepte dicha deuda en obligación".**[65] Similarmente, estipularon en la Cláusula Diecisiete (17) que **"[l]os atrasos o créditos de los bienes privativos de cada uno de los cónyuges no afectaría los bienes o el crédito del otro".**[66]

En cuanto a la contratación entre ellos, acordaron que ambos podían "otorgar cualquier tipo de contrato entre sí durante su matrimonio, incluyendo compraventa, préstamo, hipoteca, cancelación de deudas y/o créditos…o cualquier acto jurídico válido en Puerto Rico, así como firmar los documentos pertinentes para esto".[67] En particular, las partes estipularon:

> VEINTIUNA: **En el caso que por virtud de cualquier disposición de ley en cualquier jurisdicción, no obstante haberse pactado el régimen de separación de bienes entre los cónyuges,** mediante este contrato así como todo lo demás pactado, **se necesitare el concurso o consentimiento de ambos para poder llevar a**

---

[64](Negrillas suplidas). <u>Capitulaciones matrimoniales</u>, Apéndice 32

[65](Negrillas suplidas). Íd.

[66](Negrillas suplidas). Íd.

[67]Íd., pág. 33.

> **cabo cualquier transacción,** negocio o transferencia, **contrato o acuerdo en relación con cualquier derecho o bien perteneciente a uno o a ambos de los cónyuges; los comparecientes se comprometen, mutuamente a prestar dicho concurso o consentimiento a requerimiento del otro, y en su consecuencia, a otorgar y firmar los documentos para que estos fueren pertinentes, <u>sin menoscabo de la firme intención de continuar bajo el régimen de separación de bienes y todo lo demás aquí pactado</u>.**

> **VEINTIDOS: Se entenderá también que <u>el concurso o la prestación del consentimiento por cualquiera de los cónyuges conforme a lo anteriormente expresado en este inciso no se entenderá como sometimiento a régimen distinto ni renuncia parcial o total a todo lo demás aquí pactado respecto de sus bienes o matrimonio</u>.**[68]

En apretada síntesis, del contrato de capitulaciones surge que el régimen matrimonial económico seleccionado por la señora Soler Ortiz y el señor Matos Rivera fue el de separación de bienes. No obstante, los contratantes reconocieron la posibilidad de adquirir bienes en conjunto bajo dicho régimen. En cuanto esto, se pactó que la participación de cada cónyuge en dichos bienes sería determinada por las partes en cada situación específica. Similarmente, **en las Cláusulas Veintiuna (21) y Veintidós (22) se dispuso que, aunque los entonces cónyuges llevaran a cabo transacciones o contratos relacionados sobre un bien o un derecho de alguno de ellos o de ambos, ello no**

---

[68] (Negrillas suplidas). Íd.

**significaría una renuncia parcial o total al régimen de separación de bienes.**

Así las cosas, luego de contraer matrimonio, el 27 de abril de 2018, los entonces cónyuges comparecieron en capacidad de **compradores** en la Escritura Núm. 10 de Compraventa y Constitución de Hogar Seguro. La compraventa se trató del bien inmueble objeto del presente pleito, por el precio cierto y convenido de $40,000.00. En lo pertinente, se detalló en la comparecencia que:

> **Los COMPRADORES adquieren la propiedad objeto de esta transacción en partes iguales, <u>entiéndase en un cincuenta por ciento (50%) de participación cada uno en virtud de las Capitulaciones Matrimoniales otorgadas en Vega Alta</u>,** Puerto Rico, el día diecisiete (17) de noviembre de dos mil quince (2015) por **Don Héctor Juan Matos Rivera y doña Aleida Soler Ortiz,** mediante la **Escritura Número cuarenta y cinco (45) de Capitulaciones Matrimoniales** ante la Notario Marilú Méndez Oliveras.[69]

En específico, se detalló en la Cláusula Decimotercera que "**[l]os COMPRADORES adquieren la propiedad por partes iguales, entiéndase que cada uno adquiere un cincuenta por ciento (50%) común pro indiviso de la propiedad antes descrita**".[70] Similarmente, ambos comparecientes manifestaron comprender que la compraventa del inmueble sería en calidad de **comuneros,** pues en la Cláusula Decimocuarta se estableció que

---

[69] (Negrillas suplidas). Íd., pág.36.

[70] (Negrillas suplidas). Íd., pág. 46.

> **[l]os COMPRADORES han sido advertidos sobre los efectos legales de la comunidad de bienes, en específico que quien adquiere una cuota o porción abstracta de un bien la adquiere en común pro indiviso como un comunero,** por no ser una cuota o porción definida y específica…Igualmente se ha advertido que la participación adquirida por el comprador es abstracta o indefinida y que cualquier arreglo, convenio o pacto para segregar, lotificar, marcar o de algún modo identificar será nulo e ineficaz y podría constituir delito grave, si no existiese el correspondiente permiso de las agencias reguladoras. **Los COMPRADORES manifiestan que han entendido la advertencia aquí consignada** <u>**y expresamente aceptan adquirir la propiedad en su capacidad de comuneros**</u>.[71]

El mismo día en que el señor Matos Rivera y la señora Soler Ortiz firmaron la escritura de compraventa en calidad de comuneros, también suscribieron la Escritura Núm. 64 de Primera Hipoteca. Ahora bien, y en lo material a la controversia principal ante nos, en la Sexta Cláusula, al identificarse a los comparecientes se dispuso:

> SEXTA: DEUDOR: El Deudor es (son):
> HECTOR JUAN MATOS RIVERA Y ALEIDA SOLER ORTIZ, mayores de edad, casados entre sí bajo Capitulaciones Matrimoniales conforme la escritura número Cuarenta y Cinco (45) …empleados, propietarios y vecinos de Toa Alta, Puerto Rico. **ALEIDA SOLER ORTIZ, comparece como Cónyuge No Deudor.**[72]

De tal modo, de la escritura de compraventa se desprende que los entonces cónyuges adquirieron un bien inmueble en comunidad de bienes con una participación de 50% cada uno y

---

[71] (Negrillas suplidas). Íd., págs. 46-47.

[72] (Énfasis en original). Íd., pág. 73. ("ALEIDA SOLER ORTIZ, appears as a "Non-Borrower Spouse"). Íd.

a su vez, **que en la escritura de constitución de hipoteca solamente el señor Matos Rivera asumió la deuda hipotecaria del referido inmueble.** Como vimos, la señora Soler Ortiz compareció a la escritura de constitución de hipoteca como **Cónyuge No Deudor** o, como la doctrina en materia registral nombra, en calidad de hipotecante no deudora. **Hoy debemos reconocer que la responsabilidad de un tercero no hipotecante queda limitada al bien hipotecado, pues no es el deudor personal de la obligación asegurada.**[73]

Con su comparecencia como cónyuge no deudora la señora Soler Ortiz brindó su consentimiento expreso a que el inmueble adquirido en comunidad para constituir el hogar conyugal fuera gravado en seguridad de la deuda. Ahora bien, y de acuerdo con lo convenido, **dicha deuda hipotecaria le es ajena por pertenecerle exclusivamente al señor Matos Rivera, pues fue quién se obligó a ser el deudor hipotecario.**

Adviértase que dicho acuerdo entre los entonces esposos es cónsono con las escrituras de capitulaciones pactadas y con el régimen económico de separación de bienes seleccionado. Particularmente, según vimos, en la Cláusula Doce (12) en la que dispusieron que la participación de cada uno en los bienes pertenecientes al nuevo régimen, si alguno, a constituirse por ellos, lo sería según lo determinasen las partes en cada situación particular. Es decir, cada uno de los esposos participaría en los bienes adquiridos según lo

_____

[73]L. Rivera Rivera, op. cit., pág. 504.

acordaran ambos en cada eventualidad. Ello precisamente ocurrió mediante la compraventa en comunidad de bienes de la residencia matrimonial con una cuota del 50% para cada cónyuge, pero solamente el señor Matos Rivera obligándose como deudor hipotecario.

Paralelamente, bajo la Cláusula Diecisiete (17) de la escritura de capitulaciones, los entonces esposos convinieron que los atrasos o las deudas privativas de cada uno no afectarían los bienes o el crédito del otro cónyuge. De igual forma, al amparo del texto de la Cláusula Dieciséis (16) del contrato de capitulaciones, los excónyuges convinieron en que las deudas y obligaciones individuales contraídas por cualesquiera de ellos continuarían siendo privativas y no podían afectar al otro cónyuge, **a menos que específicamente y por escrito dicho cónyuge hubiese aceptado dicha deuda en obligación**. Como vimos, la Peticionaria no aceptó por escrito la deuda hipotecaria, por el contrario, no se obligó. Por consiguiente, el Recurrido asumió como deuda privativa su obligación con el acreedor hipotecario y se obligó personalmente a realizar los pagos mensuales del préstamo que grava la propiedad.

Así las cosas, contrario a lo resuelto por los foros recurridos, resolvemos que el que solamente el señor Matos Rivera hubiese realizado los pagos hipotecarios durante la duración del matrimonio no puede tener el alcance de privar a la Peticionaria de su cuota de participación en el inmueble

al momento de la extinción de la comunidad. Sencillamente, esto ocurre porque su porcentaje de participación en la titularidad del inmueble no puede responder a modo de crédito por las deudas que el señor Matos Rivera se obligó voluntariamente y asumió de forma exclusiva.[74] Como resultado, y según los términos pactados en las capitulaciones, las deudas privativas de cada cónyuge no pueden ser consideradas como créditos al momento de liquidar la comunidad de bienes.

Contrario a esa realidad jurídica, el foro apelativo intermedio hizo referencia errónea a la presunción de igualdad de cuotas y de participación proporcional de los comuneros respecto a los beneficios y las cargas bajo el derogado Art. 327 del Código Civil de 1930.[75] Con ello, ese foro obvió que siempre que lo pactado no sea contrario a la ley, la moral o el orden público, de ser clara la voluntad de las partes contratantes esta será vinculante y sus términos no pueden estar supeditados o sustituirse mediante normas supletorias. Recordemos que solo a **falta de contratos o disposiciones especiales es que la comunidad de bienes se**

---

[74]Este análisis se extiende a todas aquellas solicitudes de crédito que de la prueba vertida en el juicio en su fondo surgió fueron deudas privativas, como los préstamos personales y el financiamiento de muebles. Asimismo, se clarifica que dicho resultado opera para ambos cónyuges. Entiéndase, las deudas privativas de la señora Soler Ortiz tampoco pueden ser consideradas como crédito a su favor al momento de extinguir la comunidad.

[75]Art. 327 del Código Civil, 31 LPRA ant. sec. 1272.

**regirá de manera supletoria por las disposiciones del Código Civil aplicables a la comunidad de bienes.**[76]

Por todo ello, resolvemos que los foros recurridos erraron al adjudicar el 100% de titularidad del inmueble en común al señor Matos Rivera por ello ser contrario a los términos contratados por los excónyuges al momento de seleccionar su régimen matrimonial y de comprar e hipotecar el referido bien. Resolver lo contrario, y como muy bien alegó la Peticionaria, sería convertirla mediante <u>fiat</u> judicial en deudora obligacional e hipotecaria, a pesar de haber sido un gravamen contraído exclusivamente por el señor Matos Rivera al momento de la compraventa.

Por otra parte, es meritorio señalar que, en toda acción judicial de partición de una comunidad de bienes, es necesario realizar ciertas operaciones particionales previas para así poder lograr el ejercicio final de adjudicación. De esta forma, la operación inicial de inventario y avalúo requerirá identificar y tasar cada uno de los bienes pertenecientes a la comunidad.[77] En específico, el avalúo requerirá la valoración del estado del bien al momento de la partición.[78] Dicha operación permitirá conocer la cuantía bruta de las participaciones indivisas de los cotitulares.[79]

---

[76]Art. 326 del Código Civil, 31 LPRA ant. sec. 1271.

[77]Véase, José Ramón Vélez Torres, <u>op. cit.</u>, pág. 523.

[78]Íd.

[79]Íd.

Surge de un examen de autos que, durante el juicio en su fondo, ninguna de las partes presentó un informe de tasación o algún perito que consignara el valor actual del inmueble común objeto de la solicitud de liquidación.[80] Determinamos que esto fue un asunto material que infringió en la correcta resolución del pleito, puesto que el foro adjudicador no tuvo ante sí todos los elementos para poder determinar el valor de la participación de cada uno de los comuneros y así completar la partición.[81] Por lo tanto, y más allá del error cometido respecto a la adjudicación de titularidad, no cabe duda que la determinación final de los foros recurridos se fundamentó en un cómputo especulativo sobre el valor de las cuotas indivisas que al final tuvo el efecto de privar a la Peticionaria de su participación en el inmueble sin llevarse a cabo el procedimiento adecuado.

En consecuencia, **se devuelve el caso al foro primario para que se realice la operación particional según nuestros**

---

[80]De una revisión de autos surge que el 15 de noviembre de 2019, el foro primario ordenó al señor Matos Rivera a notificar el informe del perito tasador anunciado en la Conferencia Inicial y a la señora Soler Ortiz a anunciar el nombre y credenciales de su perito tasador o cualquier otro, así como a notificar su informe pericial. Véase, Exhibit 6, Solicitud de Certiorari, pág.21. Sin embargo, en la Sentencia se mencionó que "ninguna de las partes presentó ni ofreció prueba sobre la valoración de la propiedad". Íd., Exhibit, 14, pág. 108.

[81]Cf., Regla 23 (c)(4) de Procedimiento Civil, 32 LPRA Ap. V. ("El tribunal tendrá facultad para citar testigos periciales ajenos a los de las partes con sujeción a aquellas condiciones que discrecionalmente considere apropiadas, incluyendo el disponer su compensación por uno o ambas partes litigantes").

**lineamientos previos, lo que incluye realizar el inventario y tasación del inmueble y reconocerle a la Peticionaria su participación en la titularidad del bien inmueble, de conformidad con lo resuelto en esta Opinión.** Como resultado, se deja sin efecto la orden que emitiera el foro primario al Registrador de la Propiedad para la inscripción del referido inmueble.

Finalmente, la Peticionaria sostuvo que los foros recurridos erraron al concederle un crédito al señor Matos Rivera de $5,688.00 en concepto de renta por el periodo que la señora Soler Ortiz usó exclusivamente el inmueble en común. Al respecto, la Peticionaria manifestó que el hecho de que como comunera adviniera en la posesión como consecuencia de una orden de protección contra el Recurrido no es causa para justificar un crédito por dicha posesión exclusiva.[82] Por ello, adujo que los foros erraron en establecer que la presentación de la demanda constituyó un acto obstativo, máxime cuando el señor Matos Rivera se allanó a la orden que le impuso el desalojar la residencia conyugal.[83] Adelantamos que no le asiste la razón a la Peticionaria, pues el error no fue cometido. Veamos.

---

[82]La referida Orden de Protección tuvo una vigencia de un año, desde el 26 de noviembre de 2018 a 26 de noviembre de 2019.

[83]Véase, Exhibit 11, Orden de Protección, Solicitud de Certiorari, págs. 79-84.

Según expresamos, este Tribunal ha reconocido que en una comunidad de bienes los comuneros están impedidos de utilizar la cosa común para su particular y exclusivo beneficio sin pagar una adecuada compensación a la comunidad.[84] Ello se da porque **el uso exclusivo del bien común por uno solo de los comuneros es contrario a los principios elementales de derecho basados en la equidad, los cuales no permiten el enriquecimiento injusto.**[85] Por ello, **se reconoce que el uso de un bien común para el beneficio exclusivo de uno de los comuneros conllevará el pago de una compensación a la comunidad.**[86]

Es preciso señalar que hemos reconocido dificultades inherentes al momento de determinar desde qué momento se entiende que un comunero excluyó al otro de su participación en el bien común y, por lo tanto, tendrá el deber de compensar. Al respecto, este Tribunal ha manifestado que el "análisis requiere un examen detenido de los hechos de cada caso y, **forzosamente, que se tome en consideración la relación entre los comuneros**".[87]

_____

[84]<u>Rivera Lamberty v. Rodríguez Amador</u>, supra, pág. 205; <u>Díaz v. Aguayo</u>, supra, págs. 813-814; <u>De La Fuente v. A. Roig Sucrs.</u>, supra, pág. 534.

[85]<u>Rivera Lamberty v. Rodríguez Amador</u>, supra, pág. 207; <u>Díaz v. Aguayo</u>, supra, pág. 814.

[86]<u>De la Fuente v. A. Roig Sucrs.</u>, supra, pág. 534.

[87](Negrillas suplidas). <u>Molina González v. Álvarez Gerena</u>, supra, pág. 457.

En cuanto a esto último, no existe controversia con respecto a que los entonces cónyuges señor Matos Rivera y señora Soler Ortiz adquirieron el bien inmueble en comunidad pro indiviso para ser utilizado como residencia conyugal. Por ello, en la referida escritura de compraventa también solicitaron al Registrador de la Propiedad la inscripción de su derecho a hogar seguro al amparo de la Ley Núm. 195-2011, conocida como Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, (Ley Núm. 195-2011), 31 LPRA sec. 1858 et seq.[88]

---

[88]Véase, Exhibit 9, Solicitud de Certiorari, pág. 45.

Es pertinente clarificar que la Ley Núm. 195-2011 establece como política pública el asegurar que todo individuo domiciliado en Puerto Rico goce de protección que cobije la posesión y el disfrute de su residencia principal **contra el riesgo de ejecución de esa propiedad.** La protección económica se dirige exclusivamente a dictar las reglas para proteger el derecho **a hogar seguro de las ventas promovidas por acreedores en virtud de una sentencia o ejecución.** Exposición de Motivos de la Ley Núm. 195-2011. Es decir, el derecho de hogar seguro protegerá a la propiedad de embargo, sentencia o ejecución enmarcada en las obligaciones entre acreedor y deudor.

Por otra parte, también en nuestro ordenamiento se le reconoce al cónyuge que por razón de divorcio se le conceda la custodia de los hijos del matrimonio el derecho a reclamar como hogar seguro la vivienda matrimonial perteneciente a la sociedad legal de gananciales. Art. 109A del Código Civil de 1930, 31 LPRA ant. sec. 385a. A su vez, basado en normas de equidad y política pública hemos extendido este derecho de hogar seguro a la vivienda familiar habitual, aunque no constituya un bien ganancial, sino un bien común entre los excónyuges o constituya el bien privativo de uno de los progenitores. Candelario Vargas v. Muñiz Díaz, 171 DPR 530, 545 (2007).

Si bien la Peticionaria no planteó este reclamo de hogar seguro ante el foro primario, y aunque como regla general un tribunal apelativo no debe entrar a resolver cuestiones no planteadas a nivel de primera instancia, en este caso a manera de excepción sí lo haremos, pues en miras de impartir

Una vez disuelto el matrimonio, el señor Matos Rivera presentó la demanda de liquidación de comunidad de bienes **y solicitó una suma líquida correspondiente al tiempo en que fue privado del uso y disfrute del inmueble común**. En su sentencia, el tribunal de primera instancia determinó como un hecho que, desde noviembre de 2018 cuando las partes se separaron y hasta febrero de 2021, **la señora Soler Ortiz utilizó el inmueble de forma exclusiva**. A su vez dictaminó que debido a que las partes no presentaron prueba de cánones de arrendamiento comparables para el inmueble,[89] la renta a pagarse debía computarse a razón de la mitad del pago mensual de hipoteca ($237.00 mensuales) y desde que se presentó la demanda en marzo de 2019 hasta febrero de 2021 (24 meses), cuando el tribunal le ordenó a la señora Soler Ortiz pagar el 50% del préstamo a modo de renta.[90]

---

justicia un tribunal apelativo puede considerar señalamientos que no e han esbozados desde el principio, sobre todo cuando aquí ambas partes los discutieron detalladamente en sus comparecencias ante nos. Véase, E.L.A. v. Northwestern Selecta, 185 DPR 40, 55 (2012).

Nótese que contrario a lo que aduce la Peticionaria, en este caso no están presentes las circunstancias que brindarían la protección al bien inmueble. En primer lugar, no se trata de una acción de un acreedor para enajenar el bien y, en segundo lugar, de una revisión cuidadosa de autos surgió que no hubo una adjudicación de custodia a ninguna de las partes, puesto que el matrimonio no tuvo hijos en común. Por tanto, no tiene méritos la alegación de la Peticionaria para proteger el referido bien inmueble bajo las disposiciones de hogar seguro.

[89]Véanse, Díaz v. Aguayo, supra, pág. 817.

[90]Por su parte, el foro apelativo intermedio confirmó el crédito en concepto de renta por uso exclusivo y resolvió

Así las cosas, y evaluada la normativa aplicable resolvemos que los foros recurridos actuaron correctamente al reconocerle un crédito al señor Matos Rivera **como compensación por el tiempo en que ha sido privado del uso y disfrute del bien común.** Nótese que dicha compensación por privación de uso es distinta a la deuda hipotecaria que asumió de manera privativa el señor Matos Rivera y que discutimos en el apartado anterior. Según consignamos, esta compensación o crédito por privación de uso se reconoce en nuestro ordenamiento para resarcir al comunero que fue excluido de su posesión.[91] Tal situación ocurrió aquí tras la separación matrimonial y el uso del inmueble por parte de la señora Soler Ortiz con exclusión del Recurrido como comunero.

Ahora bien, surge de la orden de protección estipulada que el señor Matos Rivera se allanó voluntariamente a desalojar la residencia. Por lo tanto, no fue la Peticionaria quien inicialmente excluyó a su excónyuge del uso y disfrute de la propiedad proindiviso, sino la orden de protección misma. Como mencionáramos anteriormente, el comunero que

_____

que durante la vigencia de la orden de protección no se excluyó al señor Matos Rivera del uso y disfrute del bien común, y que, por tanto, fue a partir de la presentación de la demanda que se materializó el requerimiento afirmativo al solicitar la renta. Véase, Sentencia, Apéndice, Solicitud de Certiorari, pág. 469.

[91]Véanse, Díaz v. Aguayo, supra, págs. 813-814; Soto López v. Colón, 143 DPR 282 (1997); De La Fuente v. A. Roig Sucrs., supra, pág. 534.

alega haber sido excluido de su participación en la comunidad deberá identificar un acto obstativo que exhiba tal exclusión o, por el contrario, un requerimiento afirmativo del comunero que alega ser excluido.[92] Si bien es cierto que el Recurrido presentó la demanda en marzo de 2019 y ello representó el requerimiento afirmativo requerido por la jurisprudencia, esta fecha no puede utilizarse como punto de partida para el cómputo, pues surge de autos que la referida orden venció en noviembre de ese mismo año. Así, en el ejercicio de nuestra función revisora resolvemos que el mencionado canon no puede incluir para su cómputo los periodos en que la orden de protección estuvo vigente. Por esta razón, se ordena al foro de primera instancia a modificar la suma concedida según nuestros lineamientos.

## IV.

Por los fundamentos que anteceden, se revocan parcialmente las <u>Sentencias</u> de los foros recurridos. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto. **En específico, el foro primario deberá realizar la operación particional según nuestros lineamientos previos, lo que incluye realizar el inventario y tasación del inmueble, reconociéndole a la Peticionaria su participación en la titularidad del referido**

---

[92] <u>Molina González v. Álvarez Genera</u>, supra, págs. 456-457.

**bien, de conformidad con lo resuelto en esta <u>Opinión</u>**. De igual forma, deberá modificar el crédito concedido por concepto de uso exclusivo del bien común, según lo aquí reseñado. Como resultado, se deja sin efecto la <u>Orden</u> que emitiera el foro primario al Registrador de la Propiedad de Toa Alta para la inscripción del referido inmueble a nombre del señor Matos Rivera.

Se dictará Sentencia de conformidad.


                                        Luis F. Estrella Martínez
                                            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Héctor Juan Matos Rivera<br><br>Recurrido<br><br>v.<br><br>Aleida Soler Ortiz<br><br>Peticionaria | CC-2023-0480 | Certiorari |

Sentencia

En San Juan, Puerto Rico, a 21 de mayo de 2024.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente S*entencia, se revocan* parcialmente las Sentencias de los foros recurridos. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo