ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ROBERTO PALOU BOSCH, AMARILYS DE JESÚS GONZÁLEZ Y LA SOCIEDAD DE GANANCIALES COMPUESTA POR AMBOS Parte Apelante<br><br>v.<br><br>MACELO GUAYNABO SJMC, LLC; GUAYNABO PREMIUM MEAT, LLC; ROBERTO MORALES NAVARRO; WANDA IVETTE MORALES GÓMEZ; JANETTE MORALES GÓMEZ; JAVIER O'FARRILL MORALES; DAGMARIE O'FARRILL MORALES; LIMARIE O'FARRILL MORALES<br><br>Parte Apelada | KLAN202400541 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Caso Núm.: GB2023CV01075<br><br>Sobre: Desahucio en precario |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 23 de septiembre de 2024.

Comparecieron ante este Tribunal la parte apelante, el Lcdo. Roberto Palou Bosch (en adelante, "el licenciado Palou Bosch"), la Sra. Amarilys de Jesús González (en adelante, la "señora de Jesús González") y la Sociedad Legal de Gananciales compuesta por ambos (en adelante y en conjunto, los "Apelantes"), mediante recurso de apelación presentado el 3 de junio de 2024. Nos solicitaron la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (en adelante, el "TPI"), el 28 de mayo de 2024, notificada y archivada en autos

Número Identificador
SEN2024_____

el mismo día. A través de dicho dictamen, el TPI declaró "No Ha Lugar" la "**Demanda**" sobre desahucio en precario interpuesta por los Apelantes.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I.**

El caso de autos se remonta al 29 de noviembre de 2023, fecha en que los Apelantes presentaron una "**Demanda**" sobre desahucio en precario en contra de Macelo Guaynabo SJMCM, LLC (en adelante, "Macelo"), Guaynabo Premium Meat, LLC (en adelante, "Premium"), la Sra. Wanda Ivette Morales Gómez, la Sra. Jannette Morales Gómez, el Sr. Roberto Morales Navarro, la Sra. Limarie O'Farrill Morales, la Sra. Dagmarie O'Farril Morales y el Sr. Javier O' Farril Morales (en adelante y en conjunto, los "Apelados"). En la misma, alegaron que tenían constituida una sociedad civil junto al Sr. Jorge Morales Cruz (en adelante, el "señor Morales Cruz") y a la Sra. Julia Navarro Navarro (en adelante, la "señora Navarro") para la operación de un negocio de matanza de animales en una propiedad localizada en el Municipio de Guaynabo, cuya descripción lee como sigue:

> Rústica: Parcela de terreno en el Barrio Mamey, del término municipal de Guaynabo, con una caída superficial de once punto noventa y ocho mil doscientos noventa y nueve (11.98299) cuerdas, equivalentes a cuarenta y siete mil cero noventa y siete punto nueve mil quinientos treinta y cuatro (47,097.9534) metros cuadrados , en lindes por el Norte, con un camino municipal de diez metros de ancho que la separa de la Sucesión de Zenón Díaz; por el Este, con la Carretera Estatal número ochocientos treinta y seis y el Río Guaynabo; por el Oeste, con remanente de la finca principal de Antonio Lecumberri Otero y esposa Juana Caribe y además, en la actualidad también colinda con la Carretera Municipal que da Guaynabo conduce al barrio Mamey y viceversa.[1]

Expresaron que el 12 de abril de 2016 firmaron cierto acuerdo de disolución de sociedad civil, el cual fue elevado a *Sentencia* el 15 de abril de 2016, en el caso civil núm. D AC2012-1632, poniendo fin a la sociedad civil conocida como "Macelo La Muda" y, a su vez, creando una comunidad de bienes sobre la referida propiedad, sus edificaciones, los bienes inmuebles, maquinarias y permisos federales y estatales necesarios para

---

[1] *Véase*, Apéndice del Recurso de Apelación, pág. 12.

su operación. Adujeron que son dueños de una participación del cincuenta por ciento (50%) en común proindiviso de la comunidad de bienes, mientras que la otra mitad le pertenecía al señor Morales Cruz y a la señora Navarro.

Aseveraron que el 12 de abril de 2016 suscribieron con el Sr. Javier O'Farrill Morales cierto *Contrato Bilateral de Promesa de Compraventa* sobre el 50% del terreno, edificaciones, bienes muebles y licencias. Indicaron que, a través de dicho acuerdo, el Sr. Javier O'Farrill Morales obtuvo el consentimiento de ellos para ocupar el 50% de su participación en común proindiviso de la propiedad. Enunciaron que el 24 de febrero de 2017, en el caso núm. K AC2017-0151, el foro de instancia emitió una *Sentencia* a través de la cual rescindió el referido contrato, finalizando así el derecho del Sr. Javier O'Farrill Morales de ocupar y utilizar la aludida propiedad.

De igual manera, expresaron que el 6 de abril de 2017 presentaron una "**Demanda**" sobre desahucio en contra del Sr. Javier O'Farrill Morales y Premium, la cual fue declarada "Ha Lugar" el 15 de mayo de 2017, en el caso núm. DEPE2-17-0101 (en adelante, "Primer Caso de Desahucio"). Acentuaron que presentaron otra "**Demanda**", bajo el alfanumérico DAC2017-0363, contra el señor Morales Cruz y la señora Navarro sobre disolución de comunidad de bienes y que, al día siguiente, el señor Morales Cruz falleció (en adelante, "Caso de División de Comunidad"). A tenor con lo anterior, mencionaron que el señor Morales Cruz fue sustituido por su Sucesión, la cual estaba integrada por las siguientes personas, a saber: (1) el Sr. Javier O'Farril Morales, (2) la Sra. Wanda Ivette Morales Gómez (3) la Sra. Janette Morales Gómez, (4) el Sr. Roberto Morales Navarro, (5) la Sra. Limarie O'Farrill Morales y (6) la Sra. Damarie O'Farrill Morales (en adelante, "Sucesión Morales Cruz").

Esbozaron que el Sr. Javier O'Farrill Morales no desalojó la propiedad el 30 de junio de 2017, tal como lo había ordenado el foro de instancia en el Primer Caso de Desahucio. Expresaron, además, que el 12 de junio de 2018, el TPI emitió una *Resolución* en el *Caso de División de Comunidad de Bienes*, mediante la cual se le ordenó a la Sucesión Morales

Cruz a que se abstuviera de utilizar la participación proindivisa de la referida propiedad perteneciente a los Apelantes. Indicaron que el 19 de noviembre de 2018, dicha Sucesión organizó junto a la señora Navarro la compañía de responsabilidad limitada conocida como "Macelo", quien ocupaba y operaba un negocio en la propiedad inmueble descrita anteriormente, pues no poseía su consentimiento. Expresaron que el 4 de junio de 2020, la Sucesión Morales Cruz junto a la señora Navarro organizaron la compañía de responsabilidad limitada "Premium", la cual también ocupaba y operaba un negocio en la propiedad inmueble en controversia, sin su consentimiento. Informaron que la señora Navarro falleció el 1 de septiembre de 2021, por lo que los miembros de su Sucesión la sustituyeron en el pleito. Señalaron que el 15 de febrero de 2023 solicitaron, por segunda ocasión, la ejecución de la *Sentencia* del Primer Caso de Desahucio. Alegaron que el TPI autorizó la ejecución de dicha *Sentencia*, pero que luego determinó que no procedía la referida ejecución por haber transcurrido el tiempo dispuesto por ley para proceder con dicho proceso post sentencia. Por último, expresaron que la referida *Sentencia* constituía cosa juzgada.

En armonía con lo anterior, le peticionaron al Tribunal que declarara "Con Lugar" la "**Demanda**" y dictara sentencia de desahucio en contra de la Sucesión Morales Cruz, la Sucesión Navarro, Premium, Macelo, sus agentes o cualquier persona que ocupe la propiedad en su nombre para que estos desalojen inmediatamente la propiedad conocida como "Macelo La Muda".

Posteriormente, el 13 de diciembre de 2023, la Sucesión Morales Cruz, la Sucesión Navarro, Macelo y Premium presentaron su "**Contestación a Demanda**", mediante la cual expresaron que los permisos federales y estatales necesarios para la operación de la actividad de matanza no pertenecían a la comunidad de bienes que mantiene la titularidad de la finca. Asimismo, adujeron que los Apelantes no han cumplido con las obligaciones asumidas ante la rescisión del *Contrato Bilateral de Promesa de Compraventa*. Expresaron que el Sr. Javier

O'Farrill Morales no ha desalojado la propiedad en controversia puesto que la ocupaba como codueño. Aclararon que la participación de los Apelantes en la propiedad es una abstracta y no del 50%. Además, indicaron que: (1) Premium y Macelo ocupaban la propiedad en calidad de dueños, (2) no necesitan el consentimiento de los Apelantes para disfrutar de su derecho, y (3) su derecho no podía ser usurpado por un copropietario.

Luego de varios trámites procesales impertinentes a la controversia que nos ocupa y de celebrado el juicio en su fondo, el 28 de mayo de 2024, el TPI emitió una *Sentencia* a través de la cual declaró "No Ha Lugar" la "**Demanda**" de desahucio en precario que nos ocupa. Específicamente, el foro *a quo* concluyó que no podía catalogarse de precaristas a seis (6) comuneros y cotitulares, sin perjuicio de que se concluya el proceso judicial sobre división de la comunidad de bienes habida entre las partes, aún pendiente de adjudicación final ante el Tribunal. En torno a la operación encausada a través de los entes corporativos de los comuneros, determinó que los reclamos de los Apelantes estaban debidamente atendidos dentro del *Caso de División de Comunidad*, en la que participan múltiples interventores instrumentales. Así pues, consideró el TPI que sería impropio intervenir en procesos encaminados y que lo prudente era dar margen y espacio a que la división de la comunidad se llevara a término en el caso ordinario existente para tales propósitos, consecuente con el mandato de un panel hermano del Tribunal de Apelaciones, en el caso núm. KLCE201800978.

Inconformes con lo anteriormente resuelto, los Apelantes acudieron ante este Tribunal mediante el recurso de epígrafe, en el que señalaron los siguientes errores:

> PRIMER ERROR: ERR[Ó] Y ABUS[Ó] DE SU DISCRECIÓN EL TPI, AL IGNORAR SIN JUSTIFICACIÓN ALGUNA LA PRUEBA DESFILADA NO CONTROVERTIDA QUE DEMOSTRÓ QUE QUIEN OCUPA, OPERA Y EXPLOTA COMERCIALMENTE LA PROPIEDAD SON MACELO GUAYNABO SJMC, LLC Y GUAYNABO PREMIUM MEAT, LLC EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.

> SEGUNDO ERROR: ERR[Ó] Y ABUS[Ó] DE SU DISCRECIÓN EL TPI AL DESCORRER EL VELO CORPORATIVO DE MACELO GUAYNABO SJMC, LLC Y GUAYNABO PREMIUM MEAT, LLC PARA DETERMINAR

CONTRARIO A DERECHO QUE CARECEN DE PERSONALIDAD JURÍDICA Y SON REALMENTE LOS MIEMBROS DE LA SUCESIÓN JORGE MORALES CRUZ Y LA SUCESIÓN JULIA NAVARRO QUIENES OCUPAN LA PROPIEDAD.

TERCER ERROR: ERR[Ó] Y ABUS[Ó] DE SU DISCRECIÓN EL TPI AL DETERMINAR CONTRARIO A LA PRUEBA DESFILADA NO CONTROVERTIDA QUE LOS MIEMBROS DE LA SUCESIÓN JORGE MORALES CRUZ Y LA SUCESIÓN JULIA NAVARRO OCUPAN LA PROPIEDAD Y COMO COMUNEROS NO PUEDEN SER PRECARISTAS.

El 17 de septiembre de 2024, los Apelados presentaron "**Alegato de la Parte Apelada**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**[2]

El Código Civil de 1930 definía el derecho de propiedad como aquel "por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquier otra". 31 LPRA sec. 1111. El mismo lleva consigo el pleno derecho de disfrutar y disponer de una cosa. Íd. El derecho de propiedad es uno de los derechos reales susceptibles a poseerse en comunidad. Díaz v. Aguayo, 162 DPR 801, 808 (2004). Existe una comunidad de bienes "cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas". 31 LPRA sec. 1271.

Se ha reconocido en nuestra jurisdicción que el tipo de comunidad que regula nuestro ordenamiento es la llamada comunidad romana, en la que cada titular tiene una cuota ideal o alícuota de la cosa. J. R. Vélez Torres, Curso de Derecho Civil, 2005, T. II, pág. 145. La distribución de la comunidad se fundamenta en una presunción de igualdad en la participación y contribución de sus miembros. Matos Rivera v. Soler Ortiz, 213 DPR ___ (2024), 2024 TSPR 50. Así pues, "el concurso de los

---

[2] El Artículo 1808 del Código Civil de 2020 dispone que: "Las acciones y los derechos nacidos y no ejercitados antes de la entrada en vigor de este Código, subsisten con la extensión y en los términos que le reconoce la legislación precedente; pero sujetándose, en cuanto a su ejercicio y procedimientos para hacerlos valer, a lo dispuesto en este Código. Si el ejercicio del derecho o de la acción se halla pendiente de procedimientos comenzados bajo la legislación anterior, y estos son diferentes de los establecidos en este Código, pueden optar los interesados por unos o por otros". 31 LPRA sec. 11713. Por tanto, para propósitos del análisis del presente caso, se utilizarán las disposiciones del Código Civil de 1930.

partícipes, tanto en los beneficios como en las cargas, será proporcionado a sus respectivas cuotas". 31 LPRA sec. 1272. Respecto al uso de los bienes, cada partícipe podrá servirse de las cosas comunes, siempre que las utilice conforme a su destino y de manera que no perjudique los intereses de la comunidad ni impida a los demás comuneros utilizarlas según sus derechos. 31 LPRA sec. 1273. Por este motivo, si no hay evidencia que indique lo contrario, se presume que un copartícipe ha dado su consentimiento implícito para que otro utilice el bien común. Matos Rivera v. Soler Ortiz, *supra*, pág. 14.

En esta misma línea, nuestro más alto foro ha expresado que el comunero no puede utilizar el bien común para su beneficio particular y exclusivo, sin pagar una compensación adecuada a la comunidad. Íd. No obstante, esta norma no es de carácter absoluto puesto que cabe la posibilidad de que se haya prestado un consentimiento expreso o tácito o que los comuneros hayan alcanzado un acuerdo sobre el uso del bien. Díaz v. Aguayo, *supra*, pág. 814. Es menester destacar que un comunero tendrá derecho a recibir una compensación por el periodo durante el cual fue excluido de su participación en la comunidad cuando identifique un acto que suponga dicha exclusión o realice un requerimiento afirmativo. Matos Rivera v. Soler Ortiz, *supra*, pág. 15. En otras palabras, la obligación de compensar al comunero que fue excluido de la posesión y uso del bien surge a partir del referido acto o solicitud. Íd., págs. 15 y 16.

Cabe aclarar que los codueños de una propiedad lo que ostentan es una cuota abstracta e indeterminada sobre el bien. Oquendo v. Registrador, 78 DPR 118, 121 (1955). Dicha cuota abstracta recae sobre la totalidad de la propiedad. Enríquez v. Registrador, 65 DPR 407, 421 (1945). Es decir, mientras no se efectúa la división de la comunidad no cabe espacio para argumentar que dicho comunero es dueño de una porción determinada. Íd. Sólo así un comunero puede ejercer actos de enajenación de un bien, toda vez que es a través del proceso de división de la comunidad que se adjudican porciones o bienes determinados en comunidad.

Por otro lado, ningún comunero está obligado a permanecer en comunidad, por lo que cada uno puede solicitar en cualquier momento la división del bien común. 31 LPRA sec. 1279; Matos Rivera v. Soler Ortiz, *supra*, pág. 14. Esta solicitud de división de la propiedad por parte de un comunero es imprescriptible. 31 LPRA sec. 5295. Sin embargo, existe una excepción, a los efectos de que el bien no puede dividirse si dicha división lo hace inservible para el objetivo previsto. 31 LPRA sec. 1280. Por lo tanto, cuando los comuneros no pueden llegar a un acuerdo y el bien sea fundamentalmente indivisible, este se venderá y el producto de la venta será repartido entre los participantes. 31 LPRA sec. 1283.

De otra parte, nuestro ordenamiento jurídico define el concepto sucesión como la "transmisión de los derechos y obligaciones del difunto a sus herederos". 31 LPRA sec. 2081. El derecho del heredero a la herencia nace al ocurrir el fallecimiento del causante. Si hay más de un llamamiento a la universalidad de la herencia, entonces, surge lo que se conoce como comunidad hereditaria. Cintrón Vélez v. Cintrón de Jesús, 120 DPR 39, 48 (1987).

En Kogan v. Registrador, 125 DPR 636, 650 (1990), el Tribunal Supremo señaló que "[l]a comunidad hereditaria recae sobre la herencia considerada como *universita iuris*". En otras palabras, el objeto de la comunidad hereditaria es la herencia como un todo y no cada bien, derecho u obligación en particular. Los herederos obtienen un derecho sobre la herencia, no sobre los bienes particulares. Por ello, se ha establecido que vigente la comunidad hereditaria, los herederos tienen titularidad, no de bienes particulares de la masa hereditaria, sino de una cuota en abstracto de la totalidad de los bienes que formen parte del caudal relicto. Vega Montoya v. Registrador, 179 DPR 80, 88-89 (2010).

Mientras no se efectúe la partición, ningún coheredero puede reclamar específicamente un bien, los herederos sólo tienen "un derecho en el complejo hereditario." Kogan v. Registrador, *supra*, pág. 652; Cintrón Vélez v. Cintrón de Jesús, *supra*, a la pág. 48. Con la partición, se extingue la comunidad hereditaria, convirtiéndose las cuotas abstractas en títulos

concretos de bienes en particular del caudal. <u>Arrieta v. Chinea Vda. de Arrieta</u>, 139 DPR 525, 534 (1995). La partición es el proceso mediante el cual los coherederos transforman la cotitularidad de la totalidad de la herencia en títulos exclusivos sobre bienes particulares. Por tanto, en ausencia de partición hereditaria, ningún coheredero puede reclamar un derecho específico sobre un bien en particular, sino que solamente podrá exigir sus derechos sobre la totalidad del caudal relicto. <u>Vega Montoya v. Registrado</u>r, *supra*, pág. 89.

**B**.

El desahucio es el mecanismo procesal mediante el cual el propietario de un bien inmueble recupera la posesión de hecho mediante el lanzamiento o expulsión del arrendatario o precarista que no efectúa ningún pago ni contraprestación. <u>SLG Ortiz-Mateo v. ELA</u>, 211 DPR 772, 799 (2023); <u>ATPR v. SLG Volmar-Mathieu</u>, 196 DPR 5, 10 (2016). Este procedimiento sumario es regulado por el Código de Enjuiciamiento Civil y responde al interés del Estado en atender con prontitud la reclamación del dueño de un inmueble, cuyo derecho a poseer y disfrutar ha sido interrumpido. <u>SLG Ortiz-Mateo v. ELA</u>, *supra*, pág. 799. Es menester destacar que lo único que se busca con esta acción es recobrar la posesión de un inmueble por quien tiene derecho a ella. <u>ATPR v. SLG Volmar-Mathieu</u>, *supra*, pág. 10. Así, cualquier otra reclamación, como lo sería un conflicto de título, debe dilucidarse mediante un pleito ordinario. <u>CRUV v. Román</u>, 100 DPR 318, 321 (1971). Este tipo de conflicto sucede únicamente cuando el demandado opone un título de dominio que acredita que no está poseyendo en carácter de arrendatario, administrador, custodio o precarista. <u>Martínez v. Dalmau Andrades</u>, 93 DPR 191, 194 (1996).

En lo concerniente a la controversia ante nos, la posesión precaria generalmente surge a partir de actos de liberalidad o mera tolerancia, o debido al abandono o desconocimiento por parte del propietario. <u>Sucn. J. Serrallés v. Loyola</u>, 67 DPR 217, 219 (1947). Por lo tanto, un desahucio en precario solamente procede cuando el demandante inicia la acción contra

una persona que no posee ningún título o derecho sobre el bien inmueble en cuestión. En términos más concretos, se trata de una acción legal para recuperar la posesión de un bien que está siendo ocupado sin autorización del dueño, asegurando así que regrese a su titular legítimo.

**C.**

La Ley Núm. 64-2009, según enmendada, conocida como la "Ley General de Corporaciones", 14 LPRA sec. 3501 *et seq.* (en adelante, "Ley Núm. 64-2009" o "Ley de Corporaciones"), "es el estatuto especial por virtud del cual se deben atender los cuestionamientos relativos a la existencia y vida jurídica de las corporaciones privadas". Eagle Security v. Efrón Dorado *et al.*, 211 DPR 70, 85 (2023). Es norma reiterada que una corporación debidamente organizada bajo el referido estatuto tiene su propia personalidad jurídica y su propio patrimonio, distinto al de la personalidad y patrimonio de sus accionistas, ya sean estos personas naturales o jurídicas. D.A.Co. v. Alturas Fl. Dev. Corp. y otro, 132 DPR 905, 924 (1993).

En nuestro ordenamiento jurídico se adoptó la doctrina de descorrer el velo corporativo, la cual, fue desarrollada jurisprudencialmente por los tribunales federales. El profesor Carlos Díaz Olivo describe la misma como "un mecanismo de control que cierra el paso al abuso y utilización impropia de la figura corporativa". C.E. Díaz Olivo, Corporaciones*: Tratado sobre derecho corporativo*, 2da ed. rev., Colombia, Ed. AlmaForte, 2022, pág. 118. Ello podría ocurrir "cuando una corporación toma el control de otra entidad, que usualmente desaparece y se demuestra que esa sustitución tiene propósitos ilegales, constituye una violación de política pública, se perpetuaría una injusticia o un fraude, o se incumpliría con una obligación". Rodríguez v. Bco. Gub. de Fom. P.R., 151 DPR 383, 398 (2000). De igual forma, una corporación puede ser el *alter ego* de un accionista cuando la identidad de ambas partes esté confundida a tal grado que la corporación no es en realidad una persona jurídica independiente y separada. Así, pues, nuestro más alto foro judicial ha reconocido que el análisis bajo esta doctrina requiere que se demuestren propósitos o intentos de cometer

actos ilegales. Íd. Es por tal razón que la doctrina busca evitar la utilización indebida de la corporación como instrumento para perpetuar un fraude o una acción ilegal. Díaz Olivo, *op. cit.*, pág. 118.

Establecido lo anterior, la única forma en que un tribunal puede descartar la personalidad jurídica de una corporación para sujetar el patrimonio de ésta con el de sus accionistas, a los fines de que la corporación responda por las deudas y obligaciones de los accionistas, será en aquellos casos en que la corporación actúe meramente como un *alter ego* o instrumento económico pasivo de sus únicos accionistas, recibiendo estos exclusiva y personalmente los beneficios producidos por la gestión corporativa. Por lo tanto, "[l]a consecuencia de la aplicación de la doctrina de descorrer el velo corporativo es suspender la exención de responsabilidad que, de ordinario, asiste a los accionistas de una corporación con respecto a las deudas corporativas, para hacerlos responsables de estas". Díaz Olivo, *op. cit.*, pág. 117.

**D.**

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos

subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". Gómez Márquez *et al.* v. El Oriental, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. Íd.

**III.**

En el presente caso, los Apelantes nos solicitaron la revocación de la *Sentencia* del TPI, a través de la cual declaró "No Ha Lugar" la "**Demanda**" sobre desahucio.

Los tres señalamientos de error esgrimidos están íntimamente relacionados, por lo que se abordarán de manera conjunta en la discusión. En síntesis, los Apelantes alegan que el TPI erró y abusó de su discreción al: (1) ignorar la prueba desfilada que demostró que quien ocupa, opera y explota comercialmente la propiedad son Macelo y Premium, (2) descorrer el velo corporativo de Macelo y Premium para determinar que quienes ocupan la propiedad son los miembros de la Sucesión Morales Cruz y Sucesión Navarro Navarro y (3) determinar que la Sucesión Morales Cruz y la Sucesión Navarro Navarro ocupan la propiedad como comuneros, por lo que no pueden ser considerados precaristas. No nos convence su postura. Veamos.

Surge del expediente ante nuestra consideración que los Apelantes constituyeron junto al señor Morales Cruz y la señora Navarro Navarro una sociedad civil para operar un negocio de matanza de animales en una propiedad localizada en el Municipio de Guaynabo. Esta sociedad civil fue disuelta el 12 de abril de 2016 mediante cierto acuerdo intitulado *Disolución de Sociedad Civil*, el cual fue elevado a *Sentencia* el 15 de abril de 2016. De igual manera, se desprende del legajo apelativo ante nos que el 12 de abril de 2016, los Apelantes también suscribieron un acuerdo con el Sr. Javier O'Farril Morales mediante el cual le permitieron a este último ocupar el 50% de su participación en común proindiviso sobre la aludida propiedad inmueble.

Así las cosas, el 24 de febrero de 2017, el antedicho contrato fue rescindido mediante *Sentencia* del TPI. Posteriormente, los Apelantes presentaron una primera "**Demanda**" sobre desahucio en contra del Sr. Javier O' Farril Morales y Macelo. El 15 de mayo de 2017 y notificada el 19 de junio del mismo año, el foro primario emitió una *Sentencia* en el *Primer Caso de Desahucio*, a través de la cual declaró "Ha Lugar" la "**Demanda**" y decretó el desahucio del Sr. Javier O'Farril y de Premium. En detalle, indicó lo siguiente:

> Reanudada la Vista, las partes informaron al Tribunal haber llegado a unos acuerdos, donde la parte demandada Javier O'Far[r]il Morales, acepta, libre y voluntariamente, que se dicte sentencia de Desahucio en su contra por ser precarista del uso de la participación proindiviso de la propiedad conocido como Macelo La Muda. La participación consiste de un 50% del terreno, y el 50% las edificaciones, bienes muebles, maquinarias necesarias para su operación del negocio conocida como Macelo la Muda, sitio en la Carr. 836 Int. 835, Bo. Mamey, Guaynabo, Puerto Rico,00960.[3]

El 17 de mayo de 2017, los Apelantes instaron una "**Demanda**" contra el señor Morales Cruz y la señora Navarro sobre disolución de comunidad bajo el caso Núm. D AC2017-0363. Dado a que los demandados fallecieron, sus descendientes los sustituyeron en dicho procedimiento judicial. Ambas Sucesiones están integradas por las siguientes personas, a saber: (1) Sr. Javier O'Farril Morales, (2) Sra. Wanda Ivette Morales Gómez, (3) Sra. Janette Morales Gómez, (4) Sr. Roberto Morales Navarro y (5) Sra. Dagmarie O' Farrill Morales. Actualmente, dicho caso se encuentra paralizado debido la protección que ofrece el Código de Quiebras. En este intervienen, la Cooperativa de Porcicultores de Puerto Rico y el Caribe y la Junta Administrativa del Fondo para el Fomento de la Industria de la Carne de Res de Puerto Rico.

**Como parte del proceso, se designó un contador partidor y existe una oferta de compraventa para facilitar la división de la comunidad de bienes**. Además, es menester destacar que el 28 de septiembre de 2018, un panel hermano de este Tribunal emitió *Sentencia* en el caso núm. KLCE201800978 (**dentro del *Caso de División de***

---

[3] Véase, Apéndice de la Demanda, págs. 7 y 8.

*__Comunidad__*) y determinó que procedía dividir la comunidad de bienes habida entre las partes del pleito de epígrafe sobre el inmueble en controversia.[4] En específico, concluyó el panel hermano lo siguiente:

> Coincidimos con lo planteado por los peticionarios, respecto a que en este caso procede **ordenar la disolución de la comunidad de bienes.** Una vez ordenado ello, corresponderá llegar a acuerdos respecto a la tasación/ avalúo, e inventario correspondiente. Sólo así podrá cuantificarse cuál es el caudal que dividir. **Nada quita que, hechas las precisiones anteriores, los demandados den a los demandantes el dinero que les correspondería por sus derechos propietarios, y así poder advenir como únicos dueños de lo que actualmente le pertenece en comunidad**.[5]

Cabe destacar que el 15 de febrero de 2023 los Apelantes solicitaron la ejecución de la *Sentencia* del Primer Caso de Desahucio, la cual no fue autorizada por el TPI, puesto que ya había transcurrido el término dispuesto por ley para presentar dicha solicitud. **Por último, estando pendiente el** *Caso de División de Comunidad de Bienes***, los Apelantes presentaron la "Demanda" sobre desahucio en precario que nos ocupa contra los Apelados**. La controversia ante nos se suscita de estos hechos.

Como se ha indicado anteriormente, una comunidad de bienes existe cuando la propiedad de una cosa o de un derecho pertenece de forma compartida a varias personas. 31 LPRA sec. 1271. La distribución de esta comunidad se basa en una presunción de igualdad en la participación y contribución de sus miembros. Matos Rivera v. Soler Ortiz, *supra*, pág. 12. Por su parte, el desahucio es un procedimiento judicial que permite al propietario de un inmueble recuperar su posesión mediante la expulsión del arrendatario o precarista que no realiza ningún pago. SLG Ortiz-Mateo v. ELA, *supra*, pág. 799. **Un desahucio en precario solo procede si el demandante insta una acción legal <u>contra alguien que no posee ningún derecho ni título sobre el inmueble en controversia</u>**. Por otro lado, la doctrina de descorrer el velo corporativo aplica cuando una corporación es utilizada como un *alter ego* de sus accionistas, permitiendo

---

[4] Tomamos conocimiento judicial de dicho caso, al amparo de la Regla 201 de las de Evidencia, 32 LPRA Ap. VI, R. 201.
[5] *Véase*, Sentencia, caso núm. KLCE201800978, pág. 13 (énfasis suplido).

así que éstos sean responsables de las deudas corporativas. Díaz Olivo, *op. cit.*, pág. 117.

Tras un exhaustivo análisis de la prueba presentada ante el TPI y de los documentos que obran en el expediente ante nos, hemos arribado a la conclusión de que el desahucio contra los Apelados no es procedente en derecho y que el TPI actuó correctamente al desestimar la "**Demanda**" de autos. **Lo anterior, está fundamentado en que las Sucesiones apeladas <u>no pueden ser consideradas precaristas, ya que poseen un título válido sobre la propiedad en disputa</u>. Es decir, no existe controversia sobre el hecho de que la titularidad sobre el bien inmueble en controversia recae sobre los Apelantes y ambas Sucesiones. Por lo tanto, es imposible legalmente determinar que los miembros de las referidas Sucesiones están ocupando la propiedad en calidad de precaristas.** <u>Nótese que un comunero no puede ser considerado un precarista porque este ostenta derechos y obligaciones sobre un bien común, a diferencia de los precaristas que carecen de derechos reconocidos por nuestro ordenamiento</u>.

**Por si fuera poco, durante el pleito de división de la comunidad de bienes habida entre las partes de epígrafe, un panel hermano de este Tribunal resolvió que entre ellos, en efecto, <u>existe una comunidad de bienes</u>. <u>Dicha determinación es final y firme</u>.** En otras palabras, existe una determinación judicial que reconoció el derecho propietario de tanto los Apelantes como de ambas Sucesiones demandadas y apeladas en el caso que nos ocupa. Además, el examen del expediente de autos refleja que la disolución final de dicha comunidad de bienes aún está pendiente de adjudicación en un pleito paralelo que culminaría luego de la correspondiente tasación, avalúo y el inventario correspondiente. Por consiguiente, decretar el remedio solicitado por los Apelantes en el caso de epígrafe equivaldría a despojar a los Apelados de un derecho que poseen y que es inconsistente con una determinación final de este Tribunal. **De ahí que coincidimos con el TPI, a los efectos de que no puede catalogarse de precaristas a seis (6) comuneros y cotitulares, <u>estando pendiente</u>**

**el proceso judicial sobre división de la comunidad de bienes**. Concluir lo contrario, sería un contrasentido jurídico si tomamos en consideración todos los derechos reconocidos por ley a las partes y la finalidad de los procedimiento judiciales litigados y los que aún quedan pendientes de adjudicación.

Por otro lado, la prueba presentada ante el foro de instancia estableció que las compañías Macelo y Premium fueron constituidas por los herederos de ambas Sucesiones para gestionar únicamente el negocio de matadero de animales sobre la propiedad de la cual son cotitulares. Es decir, estas entidades fueron creadas para fines administrativos y no afectan la relación jurídica existente entre los comuneros de epígrafe. Coincidimos con los Apelados, a los efectos de que nada en nuestro ordenamiento jurídico prohíbe que los miembros de una sucesión puedan efectuar una empresa común en beneficio de los bienes que componen la masa hereditaria. **En otras palabras, al analizar todos los documentos que obran en los autos, concluimos que el objetivo de ambas entidades es administrar una porción del bien inmueble que les pertenece a ambas Sucesiones y sobre el cual existe una comunidad con los Apelantes**.

**Además, luego de examinar con detenimiento la transcripción de la prueba oral, notamos que no se presentó un ápice de prueba de la cual se pudiera concluir que dichas compañías están actuando como un *alter ego* de los miembros de las Sucesiones**. Esto es, el expediente está carente de evidencia alguna que establezca que dichas entidades jurídicas funcionan como meros instrumentos para evadir responsabilidades o llevar a cabo transacciones en nombre de los miembros de las Sucesiones.

En consecuencia, la doctrina de descorrer el velo que pretende suspender la exención de responsabilidad que asiste a los accionistas, no es relevante en este contexto. Además, la operación encausada a través de los entes corporativos de los comuneros está debidamente atendida dentro del *Caso de División de Comunidad*, en la que participan múltiples

interventores instrumentales. **Adicionalmente, no se aportó prueba que demostrara que dichos entes jurídicos efectuaran algún acto de exclusión de uso de la propiedad en contra de los derechos propietarios de los Apelantes**.

En suma, luego del análisis correspondiente de la prueba vertida ante el TPI, no hallamos indicador alguno que nos permitiera concluir que el juzgador de los hechos incurrió en pasión, prejuicio o parcialidad o movido por inclinaciones personales de tal intensidad que provocó que adoptara posiciones, preferencias o rechazos con respecto a las partes o sus causas de acción.

Del examen de la totalidad de la evidencia, estamos convencidos de que no se cometió un error en la forma en que el TPI aquilató la misma o que las conclusiones de derecho a las que arribó estuvieran en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la prueba recibida. En otras palabras, en este caso la apreciación de esa prueba no se distanció de la realidad fáctica y jurídica existente entre las partes o fue inherentemente imposible o increíble. Por tanto, concluimos que el TPI no cometió los errores señalados por los Apelantes.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones