Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Fior Daliza Félix Rodríguez<br><br>Apelada<br><br>vs.<br><br>Ramón Ortiz Romero por sí y haciendo negocios como Super Coin Laundry, Superkleen, Inc.<br><br>Apelante | KLAN202500120 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2019CV07505<br>Sala: 505<br><br>Sobre: Liquidación y División de Comunidad de Bienes |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de marzo de 2025.

Comparece ante nos, el señor Ramón Ortiz Romero (en lo sucesivo, Sr. Ortiz Romero o apelante), quien presenta recurso de apelación en el que solicita la revocación de la "Sentencia" dictada el 13 de enero de 2025,[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicho dictamen, el foro primario concluyó que: (1) existe una comunidad de bienes entre el apelante y la señora Fior Daliza Félix Rodríguez (en adelante, Sra. Félix Rodríguez o apelada); (2) esta última posee el 50% del valor de la lavandería ubicada en Plaza del Norte; (3) al Sr. Ortiz Romero le corresponde el 50% del producto de la venta de la lavandería ubicada en Barrio Obrero; y (4) las partes no vendrán obligadas a satisfacer las participaciones en las lavanderías hasta tanto se conozca el valor de la lavandería ubicada en Plaza del Norte.

---
[1] Notificada el 14 de enero de 2025.

Número Identificador

SEN2025 _____

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, modificamos el dictamen apelado mediante los fundamentos que expondremos a continuación.

**I.**

El 24 de julio de 2019, la Sra. Félix Rodríguez presentó una "Demanda" sobre liquidación y división de comunidad de bienes contra el Sr. Ortiz Romero. En resumidas cuentas, alegó que ambas partes sostuvieron una relación de convivencia por 13 años, y que durante este plazo adquirieron una serie de activos, incluyendo dos instalaciones comerciales de lavado y secado de ropa ubicadas en Plaza del Norte y Barrio Obrero. Adujo que las partes trabajaban para el funcionamiento de ambas instalaciones, y que el producto de sus esfuerzos era depositado en una cuenta bancaria. No obstante, arguyó que, luego de la separación de las partes, el apelante retuvo el control de las operaciones y ganancias del *laundry* de Plaza del Norte. Asimismo, afirmó que las partes adquirieron un apartamento que genera cánones en concepto de arrendamiento, y que el Sr. Ortiz Romero también le privó de estas ganancias.

El Sr. Ortiz Romero presentó su alegación responsiva el 20 de noviembre de 2019, y negó varias de las alegaciones contenidas en la reclamación. Aunque reconoció que las partes adquirieron bienes en comunidad, acentuó que hay otros bienes adquiridos sin la participación de la apelada. Indicó que ambos *laundry's* fueron adquiridos exclusivamente por él, y que la apelante únicamente contribuyó con su trabajo en la lavandería de Barrio Obrero, la cual mantuvo en su posesión. Por otro lado, el apelado presentó una reconvención en la que alegó que el inmueble arrendado es suyo. Así, reclamó los pagos efectuados en concepto de renta por los últimos 4 años, cantidad que estimó en $100,000.00.

El 18 de febrero de 2025, la Sra. Félix Rodríguez presentó su "Contestación a Reconvención" y negó haber devengado la cantidad reclamada por el apelante, ya que la suma recibida en cánones de arrendamiento se utilizó para costear gastos de hipoteca y otras utilidades. Asimismo, rechazó haber obtenido ganancia alguna del *laundry* de Barrio Obrero, pues, según alegó, opera en déficit.

Posteriormente, el apelado enmendó su contestación a la demanda a los fines de aceptar unas alegaciones y aclarar otras.[2] Con motivo de lo anterior, la Sra. Félix Rodríguez volvió a contestar la reconvención y, esencialmente, esgrimió idénticos argumentos.[3]

Tras varios trámites procesales impertinentes al caso, el 13 de septiembre de 2024, las partes presentaron su "Informe sobre Conferencia con Antelación al Juicio entre Abogados y Abogadas". La Conferencia con Antelación al Juicio se celebró el 17 de septiembre de 2024.[4]

Así las cosas, se celebró juicio en su fondo los días 28 y 29 de octubre de 2024. En el inventario se identificaron los siguientes bienes a dividir: (1) Super Coin Laundy ubicado en Plaza del Norte, (2) Superkleen Laundry ubicado en Barrio Obrero, y (3) las rentas devengadas por el apartamento. Aquilatada la prueba testimonial y documental presentada por las partes, el 13 de enero de 2025,[5] el Tribunal de Primera Instancia emitió "Sentencia" mediante la cual formuló las siguientes determinaciones de hecho, las cuales hacemos formar parte íntegra del presente dictamen:

> *1. La parte demandante, Fior Daliza Rodríguez, es mayor de edad y vecina de San Juan, Puerto Rico.*
>
> *2. El demandado, Ramón Ortiz Romero, es mayor de edad y vecino de San Juan, Puerto Rico.*

---

[2] Véase, "Contestación a la Demanda Enmendada" del 23 de enero de 2020; apéndice pág. 41.
[3] Véase, "Contestación a Reconvención" del 2 de febrero de 2020; apéndice pág. 44.
[4] "Véase, "Minuta-Resolución" transcrita el 17 de septiembre de 2024; apéndice pág. 70.
[5] Notificada el 14 de enero de 2025.

*3. Las partes mantuvieron una relación afectiva consensual que comenzó en o alrededor del año 2007.*

*4. Durante el año 2007, la demandante comenzó a convivir con el demandado, en la casa en que este residía en Villa Esperanza, Carolina, Puerto Rico.*

*5. Las partes nunca contrajeron matrimonio entre sí.*

*6. Cuando las partes se conocieron, el demandado trabajaba realizando mudanzas y luego comenzó a trabajar en el Restaurante Metropol de Isla Verde, en el área de la cocina.*

*7. Durante la relación consensual, aproximadamente entre los años 2007 y 2008, la demandante adquirió la Cafetería "Frutilandia".*

*8. Para adquirir la Cafetería "Frutilandia", la demandante hipotecó un inmueble que esta poseía en Santo Domingo, República Dominicana; y obtuvo un préstamo por la suma de Treinta y Cinco Mil Dólares ($35,000.00).*

*9. Cercano a adquirir la Cafetería "Frutilandia", la demandante le solicitó al demandado que trabajara con ella en la Cafetería, y él accedió.*

*10. Tanto la demandante, como el demandado, trabajaron en la Cafetería "Frutilandia", pero ninguno tenía salario. Ambos disfrutaban los ingresos del negocio, producto del trabajo de ambos.*

*11. Las ganancias de la Cafetería se depositaban en una cuenta comercial en FirstBank, en la que firmaban tanto la demandante, como el demandado.*

*12. Luego de la apertura de la Cafetería, la lavandería (laundry) de Norte Shopping Center, que se encontraba al lado de la Cafetería, cerró.*

*13. Cuando la lavandería (laundry) de Norte Shopping Center cerró, mantenía una deuda de $24,000.00.*

*14. En el año 2012, el demandado adquirió (asumió la llave) de la lavandería (laundry) Norte Shopping Center, abonando $10,000.00 a la deuda de $24,000.00 que había heredado del dueño anterior; de los cuales $9,000.00 le fueron prestados al demandado por una amiga que se encontraba en la República Dominicana.*

*15. El dinero que se utilizó para adquirir el negocio de la lavandería en Norte Shopping Center lo gestionó el demandado.*

*16. La demandante no es parte firmante en el contrato de arrendamiento de la lavandería en Norte Shopping Center.*

*17. Cuando el demandado adquirió la lavandería en Norte Shopping Center, las máquinas no funcionaban.*

*18. La demandante vendió la Cafetería "Frutilandia" y con parte del producto de dicha venta, se adquirieron unos equipos de lavandería para la lavandería en Norte Shopping Center.*

*19. Para julio de 2017, ambas partes firmaron el contrato de arrendamiento de una lavandería (laundry) en Barrio Obrero (Avenida Borinquen 1953).*

*20. Luego del paso del Huracán María, la lavandería ubicada en Barrio Obrero (Avenida Borinquen 1953) tuvo servicios de agua y energía eléctrica relativamente rápido (2 semanas luego del evento atmosférico); pero la lavandería en Norte Shopping Center, no, por el paso del huracán.*

*21. Ambas partes trabajaron juntos, en común esfuerzo, el negocio de la lavandería ubicada en Barrio Obrero (Avenida Borinquen 1953).*

*22. Ambas partes disfrutaron de las ganancias que se obtenían de la lavandería ubicada en Barrio Obrero (Avenida Borinquen 1953).*

*23. No obstante, la demandante era quien manejaba los ingresos y las finanzas de la lavandería ubicada en Barrio Obrero (Avenida Borinquen 1953).*

*24. Las ganancias de la lavandería ubicada en Barrio Obrero (Avenida Borinquen 1953) se depositaban en una cuenta en Scotiabank, a nombre de ambas partes.*

*25. Para finales de diciembre de 2017 y principios de 2018, surgieron controversias entre las partes que conllevaron solicitudes de órdenes de protección.*

*26. Como parte de estas controversias, la demandante quedó administrando la lavandería en Barrio Obrero; y el demandado quedó administrando la lavandería en Norte Shopping Center.*

*27. La demandante sostiene que la "división" de las lavanderías no fue por mutuo acuerdo.*

*28. Luego de esta "división" de las lavanderías, las partes no se compartían los frutos que generaban -si alguno- las lavanderías.*

*29. La relación consensual entre las partes finalizó aproximadamente para el 8 de junio de 2018.*

*30. Posteriormente, para el año 2022, la demandante "vendió" la lavandería, ubicada en Barrio Obrero, por la suma de $30,000.00.*

*31. Del producto de la "venta" de la lavandería, ubicada en Barrio Obrero, la demandante no le entregó suma de dinero alguna al demandado; ni lo consultó antes de venderla.*

*32. Durante la relación afectiva consensual, las partes -ambos- manejaban y administraban cuentas bancarias personales y de negocio, en común.*

*33. El inmueble ubicado en la Avenida D #2051, Miraflores, Villa Palmeras, San Juan, finca 16927, en San Juan, le pertenece, registralmente a Wally Evangelista Rodríguez y Ligia Estevania Frías Pacheco.*

*34. Las partes alegaron que el inmueble ubicado en la Avenida D #2051, Miraflores, Villa Palmeras, San Juan, fue adquirido, por ambos, mediante subasta y que Wally Evangelista, quien es conocido suyo, fungió como testaferro.*

*35. El inmueble ubicado en la Avenida D #2051, Miraflores, Villa Palmeras, San Juan consta de dos pisos y está dividido en apartamentos los cuales han sido arrendados en diferentes periodos.*

*36. El producto de las rentas los recibió y/o recibe, exclusivamente, la demandante y no le ha dado participación al demandado.*

*37. La demandante reside en una de las unidades del inmueble ubicado en la Avenida D, en Barrio Obrero.*

Tras un análisis de los hechos que anteceden y del derecho aplicable, el foro apelado concluyó que: (1) se constituyó entre las partes una comunidad de bienes por pacto implícito; (2) la Sra. Félix Rodríguez posee el 50% del valor de la lavandería ubicada en Plaza del Norte; (3) al Sr. Ortiz Romero le corresponde el 50% del producto de la venta de la lavandería ubicada en Barrio Obrero; (4) debido a que se desconoce el valor de la lavandería ubicada en Plaza del Norte, las partes contratarán un perito con el fin de que este último obtenga el valor de dicho negocio; y (5) una vez se conozca el valor de la lavandería ubicada en Plaza del Norte, las partes entonces se pagarán mutuamente sus participaciones en las lavanderías.

En desacuerdo con el dictamen, el Sr. Ortiz Romero recurre ante esta segunda instancia judicial y señala la comisión de los siguientes errores, a saber:

*A. Primer Error: Erró el TPI al determinar que entre las partes se constituyó una comunidad de bienes y que las participaciones de cada uno es al 50%.*

*B. Segundo Error: Erró el TPI al determinar que a la apelada le corresponde el 50% del valor de la lavandería de Plaza del Norte.*

*C. Tercer Error: Erró y abusó de su discreción el TPI al emitir sentencia final sin la correspondiente tasación u opinión de valor de la lavandería de Plaza del Norte, y ordenar que el proceso de valoración del negocio se realice post sentencia.*

*D. Cuarto Error: Erró el TPI al supeditar el pago al apelante de la lavandería de Broquen por la cantidad de $15,000.00, hasta tanto se conozca cuál es el valor del negocio de la lavandería de Plaza del Norte.*

**II.**

Nuestro ordenamiento reconoce dos tipos de concubinato: (1) el queridato y (2) el *more uxorio*. El queridato se configura cuando uno o ambos miembros de la pareja están casados con otra persona y, por tanto, impedidos de contraer matrimonio entre sí. *Caraballo Ramírez v. Acosta*, 104 DPR 474, 476 esc. 1 (1975). Por otro lado, el concubinato *more uxorio* surge cuando dos personas con aptitud para casarse deciden convivir de manera pública como si fueran cónyuges, pero sin cumplir con las formalidades legales del matrimonio. *Torres Vélez v. Soto Hernández*, 189 DPR 972, 989-990 (2013).

Si bien el concubinato y el matrimonio pueden compartir ciertas características, sus efectos jurídicos son distintos. A modo de ejemplo, la unión mediante matrimonio, ordinariamente, da lugar a una Sociedad Legal de Gananciales. *A contrario sensu*, al amparo del concubinato se genera una comunidad de bienes cuya existencia no se presume. Por tanto, el concubino que la invoque deberá acreditar su existencia. *Íd.*, a la pág. 990.

Así, cuando una parte que alega su existencia, el tribunal deberá examinar si la voluntad de los convivientes fue, en efecto, someterse a una comunidad de bienes. A esos efectos, nuestro Alto Foro ha reconocido que la comunidad de bienes podrá ser

establecida mediante: (1) pacto expreso; (2) pacto implícito; o (3) como acto justiciero para evitar el enriquecimiento injusto. Véase, *Danz v. Suau*, 82 DPR 609, 617-618 (1961).

El pacto expreso se refiere a la existencia de un contrato por el cual las partes convivientes acuerdan crear y establecer una comunidad de bienes de origen voluntario. En cambio, el pacto implícito no supone un convenio expreso a esos efectos, sino que surge de la relación humana y económica que se produjo durante la convivencia. En este último caso, corresponde a la parte que alega la existencia del concubinato aportar evidencia de que cada uno de los concubinos se obligó implícitamente a aportar bienes, esfuerzo y trabajo para beneficio común. *Caraballo Ramírez v. Acosta, supra,* a la pág. 481.

Establecido el hecho de que entre ambos miembros de la pareja se constituyó una comunidad de bienes, debe recurrirse a las disposiciones del Código Civil, cuerpo normativo que regula esta institución. En lo pertinente, nuestro Código Civil dispone que una comunidad de bienes existe "cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas". Art. 326 del Código Civil de 1930, 31 LPRA sec. 1271. Asimismo, provee que, salvo prueba en contrario, se presume que las cuotas de los partícipes en la comunidad son en partes iguales. Art. 327 del Código Civil de 1930, 31 LPRA sec. 1272. Por lo que, ausente evidencia a esos efectos se presume que las porciones de ambos convivientes son iguales. *Caraballo Ramírez v. Acosta, supra,* a la pág. 484. En palabras simples, corresponde a la parte que alegue una participación superior al cincuenta por ciento del valor de los bienes aportar la prueba que sustente dicha afirmación. *Íd.*

Lo anterior implica que la igualdad de cuotas —derivada del Art. 327 del Código Civil de 1930— es presunta bajo el régimen de comunidad de bienes y, por ende, está sujeta a que la rebatan por

evidencia pertinente. *Montalván v. Rodríguez*, 161 DPR 411, 424 (2004).

Puesto que ningún copropietario está obligado a permanecer en comunidad, estos pueden solicitar que se divida la cosa común en cualquier momento. Art. 334 del Código Civil de 1930, 31 LPRA sec. 1279. La división se regirá por las reglas concernientes a la división de la herencia. Art. 340 del Código Civil de 1930, 31 LPRA sec. 1285. Al respecto, nuestra Alta Curia ha expresado que:

> *En consecuencia, el procedimiento será similar al de partición de herencia, el cual consiste en tres operaciones principales: (1) inventario y avalúo; (2) liquidación, y (3) división y adjudicación. El inventario consiste en una relación de bienes —descritos o detallados— de manera que queden suficientemente individualizados e identificados. Por su parte, el avalúo es la tasación o valoración de cada uno de los bienes del inventario y debe referirse al estado de dichos bienes al momento de la partición. Luego procede hacer la liquidación, que consiste en deducir de los bienes inventariados los pasivos y fijar el activo neto.*
>
> *Posteriormente se hará la división, que consiste en el señalamiento de la cuota del haber de cada comunero y, en virtud de ello, separar determinados grupos de bienes para pagar cada partición. Finalmente, la adjudicación es la última operación de la partición y es el hecho de entregar a cada comunero lo que le corresponde con exclusión de los demás. Matos Rivera v. Soler Ortiz,* 2024 TSPR 50, 213 DPR ___ (2024).

Por ende, resulta meritorio puntualizar que, en toda acción judicial de partición de comunidad de bienes, es necesario realizar ciertas operaciones particionales con el propósito de poder lograr el ejercicio final de adjudicación. Su omisión infringe en la correcta resolución del pleito, ya que, para completar la partición, el foro adjudicador debe tener ante sí todos los elementos que le permitan determinar el valor de la participación de cada comunero. *Íd.*

**III.**

Según revela el tracto procesal discutido, el Tribunal de Primera Instancia emitió "Sentencia" mediante la cual concluyó que existe una comunidad de bienes entre las partes. En virtud de ello, determinó que la Sra. Félix Rodríguez posee el 50% del valor

de la lavandería ubicada en Plaza del Norte, y que al Sr. Ortiz Romero le corresponde el 50% del producto de la venta de la lavandería ubicada en Barrio Obrero. Debido a que se desconoce el valor de la lavandería ubicada en Plaza del Norte, el Tribunal ordenó a las partes a contratar un perito a esos efectos. Asimismo, expuso que, hasta tanto, las partes no tendrán que satisfacer sus respectivas participaciones en las lavanderías.

En sus primeros dos señalamientos de error, el Sr. Ortiz Romero argumenta que el foro apelado incidió al determinar que: (1) entre las partes se constituyó una comunidad de bienes, (2) las cuotas de los partícipes en la comunidad son en partes iguales, y (3) a la apelada le corresponde el 50% del valor de la lavandería de Plaza del Norte. Su contención es que nunca hubo "un pacto expreso para establecer una comunidad de bienes, ni mucho menos un acuerdo implícito".[6] Adicionalmente, sostiene que a la apelada tampoco le corresponde el 50% de la participación, ya que "[n]o existe evidencia alguna, ni se demostró durante el testimonio que a la Apelada le correspondiera el cincuenta por ciento (50%) de la participación".[7] Bajo esta premisa, manifiesta que a la apelada tampoco le corresponde el 50% de la lavandería ubicada en Plaza del Norte, puesto que esta se adquirió única y exclusivamente por el apelado. Por estar íntimamente relacionados, ambos errores se discutirán en conjunto.

Conforme el derecho discutido en el acápite que antecede, una comunidad de bienes podrá ser establecida mediante pacto implícito. Esto es, mediante prueba dirigida a demostrar que entre las partes hubo la voluntad implícita de constituir una comunidad de bienes. En ausencia de pacto expreso, corresponde al juzgador evaluar la conducta de las partes a los fines de determinar si estas

---

[6] Véase, recurso a la pág. 16.
[7] *Íd.*, a la pág. 17.

se obligaron a aportar bienes, servicios y trabajo para el beneficio común. Es decir, la relación humana y económica que se produjo durante la convivencia permite inferir la voluntad constitutiva de la comunidad de bienes.

En el caso de autos, según hemos expuesto, el Tribunal de Primera Instancia celebró juicio en su fondo y, tras evaluar la prueba ante sí, determinó que: (1) entre las partes hubo una relación afectiva que comenzó en o alrededor del año 2007, (2) ambos convivían en un inmueble ubicado en el municipio de Carolina, (3) durante el transcurso de su relación la apelada adquirió una cafetería denominada "Frutilandia", donde ambos se desempeñaban juntos, (4) ninguno tenía salario, sino que ambos disfrutaban los ingresos del negocio, producto de su trabajo, (5) todas las ganancias se depositaban en una cuenta bancaria que poseían en común, (6) para el año 2012, el apelante adquirió el *laundry* de Plaza del Norte, abonando $10,000.00 a la deuda de $24,000.00 que heredó del dueño anterior, (7) a pesar de que fue el demandado quien firmó el contrato de arrendamiento y gestionó el dinero, las máquinas del *laundry* no funcionaban, y (8) los equipos de lavandería los adquirió la apelada, mediante el producto de la venta de la cafetería "Frutilandia".

**En vista de que estas determinaciones de hecho no han sido controvertidas**, **le debemos otorgar deferencia al tribunal inferior**. Es principio cardinal de la revisión apelativa que, ante ausencia de error manifiesto, prejuicio, parcialidad o pasión, los tribunales apelativos debemos abstenernos de intervenir en las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. *Peña Rivera v. Pacheco Caraballo*, 2024 TSPR 48, 213 DPR ___.

A nuestro juicio, las circunstancias fácticas discutidas son suficientes para concluir que, efectivamente, entre las partes se

constituyó una comunidad de bienes por pacto implícito.[8]  En el presente caso quedó demostrado que, tanto el apelante, así como la apelada, se obligaron mutuamente a aportar bienes, servicios y trabajo para el beneficio de ambos.  Por ejemplo, estos compraron bienes en común y poseían cuentas bancarias en conjunto; ambos aportes económicos, ubicados dentro de la relación humana, son circunstancias fácticas que implícitamente sugieren la creación de una comunidad de bienes.

El hecho de que el Sr. Ortiz Romero haya hecho una aportación económica en la adquisición de la lavandería de Plaza del Norte, ciertamente, es concerniente a la evaluación de los derechos y su participación sobre el negocio.  No obstante, este factor, por sí solo, no es determinante.  Aunque el apelante aportó cierta cantidad en metálico para la compra de esta lavandería, no podemos obviar el hecho de que, cuando se adquirió la misma, las máquinas de lavandería no funcionaban.  Fue la apelada quien, después de vender su cafetería, aportó económicamente para la compra de las máquinas; corazón del negocio sin cuya existencia no funcionaría.  La aportación económica por parte del apelante no es el único criterio a considerar, sino que, además, se contempla la aportación de bienes o servicios para dicha adquisición.

Habiéndose demostrado la existencia de la comunidad de bienes, es de aplicación la presunción de igualdad de cuotas que establecía el Art. 327 del Código Civil de 1930, *supra.*  Por tanto, contrario a lo que sugiere el apelante en su escrito, la apelada no es quien tenía el peso de la prueba para demostrar que a ella le correspondía el 50% de participación.  Todo lo contrario, es quien alega una participación superior al 50% del valor de los bienes

---

[8] Lo anterior, sin tan siquiera considerar las determinaciones sobre la lavandería de Barrio Obrero, el hecho de que las partes adquirieron un bien inmueble en común, y que, durante su relación, las partes -ambos- administraban cuentas bancarias personales y de negocio, en común. Esto, sin duda, fortalece nuestra conclusión.

quien tiene que evidenciar dicha afirmación. Ausente esta prueba, se presume que las porciones de ambos convivientes son iguales. *Caraballo Ramírez v. Acosta, supra*, a la pág. 484.

Por lo que, para que el apelante pudiese poner al foro primario en posición de concluir que dicha parte posee más del 50% de la lavandería de Plaza del Norte, este debía demostrar, a satisfacción del Tribunal, que su aportación fue mayor. **Empero, los hechos que halló probados el tribunal sentenciador, lejos de rebatir esta presunción, la fortifican.**

En el caso de marras, el foro *a quo* razonó que, "[e]n cuanto a los negocios habidos entre las partes, el tribunal no recibió prueba suficiente para rebatir la presunción de igualdad en la participación de ambas partes en la comunidad habida entre ellos".[9] **Del legajo apelativo no surge evidencia que permita concluir lo contrario, por lo que el apelante no nos ha puesto en posición de variar esta determinación.** Simpatizamos con el foro apelado en cuanto a que, independientemente de quien firmó el contrato, lo cierto es que el negocio prosperó por el esfuerzo común de ambas partes. Por tanto, concluimos que los primeros dos errores no fueron cometidos.

En su tercer señalamiento de error, el apelante argumenta que el foro *a quo* abusó de su discreción al emitir sentencia final sin contar con una opinión sobre el valor de la lavandería de Plaza del Norte, y ordenar que el proceso de valoración del negocio se realice post sentencia. Sobre este aspecto, tiene razón.

Surge de un examen de autos que, durante el juicio en su fondo, ninguna de las partes presentó un informe de tasación ni ofreció el testimonio de un perito a los fines de acreditar el valor actual de la lavandería ubicada en Plaza del Norte. Esta omisión afectó la adecuada resolución del litigio, ya que el foro adjudicador

---

[9] Véase, "Sentencia" a la pág. 15.

no tuvo ante sí los elementos necesarios para determinar el valor de la participación de cada comunero, y así completar la partición de los bienes.

Resulta indudable que el foro apelado emitió sentencia final sin efectuar el procedimiento correspondiente. Por este motivo, se devuelve el caso al foro primario para que este proceda con la operación particional, incluyendo la tasación y avalúo del *laundry* de Plaza del Norte, como parte del acervo comunitario compartido por ambas partes, para así culminar la división y adjudicación de la comunidad de bienes. En virtud de lo anterior, se deja sin efecto la orden que disponía la valoración post sentencia.

En cuanto al cuarto y último señalamiento de error, el apelante alega que el Tribunal de Primera Instancia erró al supeditar el pago del 50% correspondiente a la venta de la lavandería de Barrio Obrero, hasta tanto se conozca cuál es el valor del negocio de la lavandería de Plaza del Norte. No le asiste la razón.

Como ya explicamos, el foro *a quo* le puso finalidad a un pleito de liquidación de comunidad de bienes, a pesar de que todavía no se han efectuado los procedimientos necesarios para liquidar dicha comunidad. Aún no se ha determinado el valor de todos los bienes, ni se ha realizado una determinación sobre las deudas y de cómo satisfacerlas. Tampoco se ha determinado el remanente líquido, ni la forma de distribuir y adjudicar el mismo acorde la participación del 50% que poseen las partes.

Mientras no se adjudique la comunidad de bienes, las partes solo poseen una participación abstracta que, por el momento, no puede traducirse en bienes particulares o específicos. Una vez se haga la adjudicación, que es la última operación de la partición, es que se le puede entregar a cada comunero lo que le corresponde.

Mientras tanto, ninguno de estos puede reclamar lo que no posee. Art. 326 del Código Civil de 1930, *supra.*

Tras reconocer y/u ordenar que se acreditara el inventario, el Tribunal debió tomar conocimiento sobre los posibles activos y pasivos, para así ordenar el pago de las deudas y los posibles créditos que tuviese cada comunero. Ciertamente, el foro primario, dentro de su sana discreción, podrá celebrar las vistas necesarias a esos efectos. Una vez sean atendidos y resueltos estos asuntos, el Tribunal estará en mejor posición para proceder con la división y adjudicación de la totalidad del caudal.

Finalmente, queremos aclarar que el dictamen apelado es una sentencia final, toda vez que el Tribunal de Primera Instancia resolvió de manera definitiva la controversia ante su consideración. El hecho de que el foro primario emitió una determinación final sin seguir el procedimiento adecuado no implica que su dictamen sea una resolución interlocutoria. Esto, más bien, es un asunto que incide en la correcta resolución del litigio, puesto que, como ya explicamos, el foro apelado no tuvo ante sí todos los elementos necesarios para determinar el valor de la participación de cada uno de los comuneros.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de este dictamen, modificamos la sentencia apelada, emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, a los fines de dejar sin efecto la orden que disponía la valoración post sentencia. Así modificada, confirmamos y devolvemos el caso para que el Tribunal concluya la partición de la comunidad de bienes entre ambas partes, incluyendo la tasación y avalúo del establecimiento de lavandería ubicado en Plaza del Norte. Una vez se complete la valoración de todos los bienes y se determinen las deudas, si las hubiere, el Tribunal procederá a

distribuir y adjudicar el remanente líquido, según la participación que corresponde a cada parte y establecida por el Tribunal.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Adames Soto concurre con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| FIOR DALIZA FÉLIX RODRÍGUEZ<br>Apelada<br><br>*v.*<br><br>RAMÓN ORTIZ ROMERO POR SÍ Y HACIENDO NEGOCIOS COMO SUPER COIN LAUNDRY, SUPERKLEEN, INC.<br>Apelante | KLAN202500120 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil Núm. SJ2019CV07505<br><br>Sobre: Liquidación y División de Comunidad de Bienes |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

**VOTO CONCURRENTE DEL JUEZ NERY E. ADAMES SOTO**

En la Sentencia que hoy emite el Panel al cual estoy adscrito se identifica como fundamento para ordenar la modificación de la sentencia apelada que el foro primario *le puso finalidad a un pleito de liquidación de comunidad de bienes,* ***a pesar de que todavía no se han efectuado los procedimientos necesarios para liquidar la comunidad. Aún no se ha determinado el valor de todos los bienes, ni se ha realizado una determinación sobre las deudas y de cómo satisfacerlas***. (Énfasis provisto). Cónsono con tal apreciación, en su parte dispositiva este Foro intermedio ordenó devolver el caso al Tribunal de Primera Instancia para que **concluya** *la partición de la comunidad de bienes entre ambas partes, incluyendo la tasación y avalúo del establecimiento de lavandería ubicado en Plaza del Norte. Una vez se complete la valoración de todos los bienes y se determinen las deudas, si las hubiera el Tribunal procederá a distribuir y adjudicar y adjudicar el*

*remanente líquido, según la participación que corresponde a cada parte y establecida por el Tribunal.* (Énfasis provisto).

Me detuve en lo citado en el párrafo que antecede con el solo propósito de hacer evidente que la denominada *Sentencia* emitida por el Tribunal de Primera Instancia (TPI) **no** resolvió finalmente la cuestión litigiosa que estaba ante su consideración, sino más bien un incidente dentro de esta, y por tal razón es que este Tribunal de Apelaciones tuvo que ordenar su modificación, instruyendo al foro apelado sobre los asuntos que faltan por dilucidar. Es decir, si la Sentencia aludida hubiese sido final, por tanto, ejecutable, no tendría que haberse ordenado su modificación a los fines de realizar los procesos necesarios para liquidar la comunidad, que es la cuestión litigiosa.

Según es sabido, la Regla 42.1 de Procedimiento Civil, 32 LPRA Ap. V, define la Sentencia como *cualquier determinación del TPI que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse.* Así, *una vez se archiva en autos la notificación y se registra la sentencia, ésta se considera final. A partir de ese momento los derechos y obligaciones de las partes quedan adjudicados y la sentencia goza de una presunción de corrección.* R. Hernández Colón, *Práctica Jurídica de Puerto Rico: derecho procesal civil*, 5ta ed., San Juan, Ed. Lexis-Nexis, 2010, Sec. 4106, pág. 378, según fuera citado en *S.L.G. Szendrey-Ramos v. Consejo de Titulares* 184 DPR 133 (2011*). Una sentencia es final o definitiva cuando resuelve el caso en sus méritos y termina el litigio entre las partes, de forma que lo único que resta es la ejecución de dicho dictamen*. (Énfasis provisto). *Filiberty v. Soc. de Gananciales*, 147 DPR 834, 838 (1999).

En definitiva, la presunta Sentencia apelada no es ejecutable, pues faltan asuntos por atender referentes a la liquidación de bienes, de modo que estamos ante una *Resolución*

interlocutoria cuya revisión solo era posible mediante el recurso de *certiorari*, en lugar de la apelación. Por tanto, hubiese: identificado la presunta *Sentencia* emitida por el TPI como una *Resolución*; ordenado convertir el recurso en uno de *certiorari*, y; autorizado su expedición, confirmando el dictamen interlocutorio, aunque incorporando las modificaciones contenidas en la Sentencia de este Tribunal de Apelaciones para lograr su finalidad.

En San Juan, Puerto Rico, a 19 de marzo de 2025.


NERY E. ADAMES SOTO
Juez de Apelaciones